COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellants,

v.

Eugene SILER et al., Appellees.

Court of Appeals of Kentucky.

Feb. 24, 1967.

Robert Matthews, Atty. Gen., H. C. Smith, Frankfort, Eugene H. Clark, Paul L. Madden, Manchester, Dept. of Highways, for appellants.

Eugene E. Siler, Jr., Williamsburg, for appellees.

PALMORE, Judge.

Hon. Eugene Siler and his two sisters were the owners of a tract of land containing six acres, more or less, just within the city limits of Williamsburg. On it were located a 6-room frame house and some minor improvements. Incident to the construction of Interstate Highway 75 and a frontage road the state highway department condemned a substantial portion of the property, including the house, and a circuit court jury awarded the owners $8,000 as compensation.

The department appeals, contending that (1) the valuation testimony given by Mr. Siler and his witness, Hugh Steely, should have been stricken because it was based on prospective subdivision and sale of the property as lots without proof of an *expectation or probability* of such use within the near future, and (2) the evidence was not sufficient to support the verdict. We find both contentions to be without merit.

At the time of the condemnation the property was rented out for residential purposes. It was in a residential area and lay adjacent to the Cumberland College athletic field. In the process of describing it on direct examination Mr. Siler was permitted, over objection, to say that he had given consideration to subdividing the property and selling off 10 or 12 residential lots. It was his opinion that the value be-fore the taking was $8,500 and the value afterward was $500. He did not undertake or purport to base these estimates on individual lot values, but was questioned on cross-examination as follows:

Q—"I believe you stated you considered that there could be some ten or twelve lots?"

A—"Yes, sir."

Q—"What did you consider those lots worth per lot?"

A—"The way property is selling after you subdivide and get the street laid out, I think you could sell them without trouble for $1,500."

Q—"Did you take that into consideration in arriving at your estimates of value?"

A—"Yes, to some extent, I guess I did, based on my plan to possibly do that."

◼ Obviously Mr. Siler did not figure the value of the property at $1,500 per lot. Had he done so, his estimate would have amounted to no less than $15,000 plus the existing residence. Whatever may have been misleading, as the highway department now complains, was purposely elicited by its own counsel. The mention of $1,500 per lot was not volunteered by the witness and would not have been competent on direct examination. Cf. Commonwealth, Dept. of Highways v. Evans, Ky., 361 S. W.2d 766, 771 (1962). Had the tactics of the cross-examiner succeeded in demonstrating that the witness had established his valuation figure wholly or substantially on the basis of what he thought he could gross per lot, the testimony would have been rendered incompetent, and properly subject to being stricken if not revised and corrected. But that did not happen, and we perceive nothing improper in his having merely *considered* future prospects and potentials in arriving at present value.

◼ If property is adaptable to a particular use or development different from

its existing use, and the prospect that it *will be or could be* so used or developed is sufficiently imminent to affect its present market value, that prospect not only is a proper but necessary factor in determining such value. Cf. Commonwealth, Dept. of Highways v. Doolin, Ky., 411 S.W.2d 44 (decided January 27, 1967); Louisville & N. R. Co. v. White Villa Club, 155 Ky. 452, 159 S.W. 983 (1913). Nothing in the terminology of Commonwealth, Dept. of Highways v. Vincent, Ky., 357 S.W.2d 678 (1962); Commonwealth, Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922 (1964); or Commonwealth, Dept. of Highways v. Riley, Ky., 388 S.W.2d 128 (1965), was intended to convey a different impression. Even if the Siler family had never thought of subdividing or selling the property (in which case, literally speaking, there could have been neither "expectation" nor "probability"), the evidence as to its location and topography was enough to suggest the probability of its having present value for residential development. That, with qualified opinion testimony to the same effect, provided adequate foundation for the evidence in question.

■ What has been said thus far applies equally to the Steely testimony, which again was elicited on cross-examination and is as follows:

Q—"Mr. Steely, what factors did you take into consideration in arriving at your before value of $9,000.00?"

A—"In my opinion, the more valuable part of the property and the more desirable part of the property for potential development is the end adjacent to Gatliff Field, and the dwelling house would have had a substantial portion of that value. That is my thinking on it."

Q—"You say potential development?"

A—"I say the potential value of the property was in the part in the lower field. It laid better for lots."

Q—"Is that one of the things you took into consideration, that it could be subdivided into lots?"

A—"Yes, I have seen lots sold off around in the area; that determined it to the most extent."

Q—"Is that one of the main things you considered?"

A—"Yes, one of the things, and the value of the house."

Q—"Did you place a value on the house separately?"

A—"No, just as a whole."

Q—"Did you consider the price for which these potential subdivision lots might sell?"

A—"Not any specific lot."

Q—"You didn't place a specific price on each lot?"

A—"No, I have seen lots sold within sight of that property and I know what they brought."

Q—"And you thought these lots would sell similarly?"

A—"Yes, sir."

Q—"What were some of the lots near this property selling for?"

A—"$1,000.00 or $2,000.00."

Q—"That's about what you thought these would sell for?"

A—"Well, they are not getting any cheaper."

Q—"That is one of the main things you took into consideration in arriving at this value?"

A—"That's one of the factors."

Q—"One of the principal ones?"

A—"Perhaps."

■ The witness Steely operated an insurance agency and was president of a lo-

cal bank. He was well qualified to give valuation testimony. Mr. Siler was vice president of another local bank and also possessed ample qualifications to testify as an expert. There is no reasonable basis on which their evidence could be held so devoid of probative value as to render the verdict unsupportable.

The judgment is affirmed.

All concur.