**KENTUCKY BOARD OF TAX APPEALS
et al., Appellants,**

v.

**Jane Hamilton GESS et al., Appellees.**

Supreme Court of Kentucky.

Feb. 20, 1976.

William S. Riley, Asst. Atty. Gen., Thomas A. Duke, Dept. of Revenue, Frankfort, William E. Sloan, Wylie & Sloan, Lexington, for appellants.

Joseph R. Wheat, Gess, Mattingly, Saunier & Atchison, Lexington, for appellees.

PER CURIAM.

This is a controversy between several taxpayers and the state and local taxing authorities relating to the meaning and essential principles for determining the value of "agricultural and horticultural land according to the land's value for agricultural or horticultural use" as required by Section 172A of the Kentucky Constitution.

Procedurally, the taxpayers appealed to their board of supervisors from the 1971 assessments made by the local property valuation administrator (PVA). See KRS 133.-120. The PVA appealed to the state board of tax appeals (BTA) from an order of the board of supervisors decreasing the assessments. See KRS 131.340, 131.350. After a *de novo* hearing the BTA set aside the action of the board of supervisors and reinstated the original assessments made by the PVA, whereupon the taxpayers appealed to the Fayette Circuit Court. See KRS 131.-370. The game of leapfrog arrives here with an appeal by the taxing authorities from a judgment remanding the proceeding to the BTA with directions that the action of the board of supervisors be reinstated.

Before November of 1969, by virtue of Const. § 172 all non-exempt property was required to be assessed "at its fair cash value, estimated at the price it would bring at a fair voluntary sale." At the 1969 general election this provision was amended by the adoption of what is now Const. § 172A, which provides in part as follows:

"The General Assembly shall provide by general law for the assessment for ad valorem tax purposes of agricultural and horticultural land according to the land's value for agricultural or horticultural use. The General Assembly may provide that any change in land use from agricultural or horticultural to another use shall require the levy of an additional tax not to exceed the additional amount that would have been owing had the land been assessed under Section 172 of this Constitution for the current year and the two next preceding years."

In an effort to comply with this constitutional amendment the 1970 General Assembly enacted (Ch. 249, Acts of 1970) certain amendments to KRS 132.010, one of which, now KRS 132.010(9), was a new subsection as follows:

" 'Agricultural or horticultural value' means representative sales prices of comparable land purchased for agricultural or horticultural use with consideration being given to the purpose of purchase, such as, farm expansion, improved accessibility and other factors unduly influencing the sales price."

The heart question pervading the litigation is whether the assessment of farm land on the basis of comparable sales of property being used for the same purposes complies with the mandate of Const. § 172A. In this respect we quote from the order of the BTA as follows (italics added):

"The appellant, PVA, supported his assessments with *proof of comparable sales* and witnesses who testified that the lands sold *were being used for agricultural purposes* and concluded that the fair cash and the agricultural values of the subject tracts of land are one and the same. These figures ranged from $685.00 to $982.00 per acre.

"The respondents presented witnesses who testified that provided the purpose of the purchase of the land was solely for the

production of livestock, livestock products, poultry, poultry products and/or the growing of tobacco and/or other crops for profit and reasonable income from the investment farmland in Fayette County would be worth $300.00 to $600.00 per acre.

"There is testimony herein relative to the merits of evaluating land by use of comparable sales, market value, cost, income production, capitalization and other facets.

. . .

"The representative sales prices of comparable lands presented herein were made for lands *in agricultural use* at the time of sale *and which continued in agricultural use after the purchase.*

"The petitioner's assessments for the subject lands are within the limits of the proof and the law."

■ Thus it may be observed that if property was in actual use as a farm when voluntarily sold, and continued to be so used thereafter, the PVA and BTA considered the price paid for it as an accurate and sufficient indicator of its value for agricultural or horticultural use. We think that viewpoint is erroneous.

Through the years this court has consistently regarded comparable sales, when they are available, as the most reliable indicia of fair cash value, and we do not retreat from that view now. But of course Const. § 172A does not call for fair cash value. It asks for a fictitious or hypothetical figure: What would the property bring if its use for the indefinite future were restricted by law to agricultural and horticultural purposes?[1]

The fallacy of the approach taken by the taxing authorities is that even though the highest and best use of a tract of land today is for agricultural purposes, and it is actually being so used, what it will bring when offered for sale may be and often is influenced by its potential value for other purposes in the future.[2]

■ The plain fact is that there are fewer and fewer sales of property in which the price is not inflated to some degree by factors other than its value for purely agricultural and horticultural purposes. With good roads and the extension of water, electricity, and other utilities into hitherto-remote rural areas, the actual market value of a very substantial percentage of farm property reflects potential uses other than farming. Cf. discussion in *Com., Dept. of Highways v. Siler,* Ky., 411 S.W.2d 937, 938–939 (1967). Whenever farm property has a market value, or actually has sold for a price, greater than is justified by its income-producing capacity, then there is at the very least a strong suspicion that the excess reflects factors other than its value for purely agricultural and horticultural purposes. The excess market value reflected by those potential uses is the precise target Const. § 172A intends to eliminate from the taxing process.

■ It follows that the value of property for agricultural or horticultural purposes alone can never by ascertained by a mechanical application of comparable sales—even a recent sale of the very property that is being assessed—unless and until all extraneous factors, if any, entering into the price or prices paid are identified and eliminated. Nor, conversely, can income-producing capacity alone be the criterion, because two pieces of property with the same income-producing capacity will not necessarily bring the same price. If, for

1. Compare, for example, the situation that occurs in partial-taking condemnation cases, in which "loss of access" is not a compensable factor and an evaluation of the remainder tract must therefore be made on a hypothetical basis, as if it still had the original access. Cf. *Com., Dept. of Highways v. Claypool,* Ky., 405 S.W.2d 674, 676 (1966).

2. As a matter of fact, on its face the BTA approach would seem to ignore the distinct possibility that the price brought by a farm, even though it has continued in use as a farm, may very well reflect that its highest and best use actually was for a different purpose.

example, they are in different communities the supply-demand ratio may be different. One may be more desirable than the other because it is closer to good schools or to communities offering greater social and cultural advantages. These of course are factors that do legitimately bear upon the value of property for agricultural and horticultural purposes. So, too, does the accessibility of utility services have a proper relationship to the price land will bring solely for those purposes, but care and intelligence must be exercised to exclude the extent to which such "desirability" factors increase its potential, and thus its value, for other purposes. As we have indicated, there is and can be no slide-rule method or formula by which assessments conforming to Const. § 172A may be achieved quickly and in mass-production fashion.

We fully recognize that the process of assessing property in accordance with Section 172A will not be easy, but the difficulty inheres in the purpose of the constitutional amendment itself, and cannot serve as a justification for deviating in any degree from that purpose.

In its judgment setting aside the valuations fixed by the BTA the trial court incorporated a written opinion as its findings of fact and conclusions of law, expressing the view that the term "value for agricultural or horticultural use" as used in Const. § 172A can be neither enlarged nor diminished by legislative definition; hence KRS 132.010(9), which does undertake to define it, is unauthorized. With that conclusion we agree.[3] From the standpoint of substance (as distinct from procedural implementation) the constitutional amendment is self-executing and exclusive. A power to define its meaning at will would be nothing less than a power to amend it by legislation.

Citing *Walter G. Hougland & Sons v. McCracken County Board of Sup'rs*, 306 Ky. 234, 206 S.W.2d 951, 953 (1947), the trial

court held that the burden of proof in the BTA proceeding lay upon the taxing authorities, which had appealed the action of the board of supervisors, and that because their only valuation witness conceded that he had given no consideration to the possible influence of other factors on prices paid for comparable property purchased for agricultural use his testimony did not have sufficient probative force to meet that burden. Cf. *Gatliff v. White*, Ky., 424 S.W.2d 843, 844 (1968). We find no fault in this reasoning. Hence the judgment directing reinstatement of the action taken by the board of supervisors was correct.

The judgment is affirmed.

All concur except REED, C. J., who did not participate in the consideration or decision of this case.

---

**3.** Other provisions of the 1970 legislation may also infringe upon the terms and effect of Const. § 172A, but they are not involved in this case.