INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC. a/k/a ISKCON, Appellant,

v.

COMMONWEALTH of Kentucky, by and on relation of Maurice P. CARPENTER, Commissioner of Revenue, Appellee.

Court of Appeals of Kentucky.

Aug. 29, 1980.

Rehearing Denied Nov. 7, 1980.

Discretionary Review Denied Feb. 13, 1981.

J. Phillip Griffin, Jr., Louisville, for appellant.

Charles W. Kurtz, E. Peck Lyle, Jr., Dept. of Revenue, Frankfort, for appellee.

Before BREETZ, HOWERTON and WHITE, JJ.

HOWERTON, Judge.

The International Society for Krishna Consciousness, Inc., (hereinafter referred to as ISKCON) appeals from a summary judgment awarding the Commonwealth $12,465.80 plus interest and permanently enjoining ISKCON from making retail sales within the Commonwealth while owing the debt or while failing to have a retail sales tax permit.

In 1978 a group of ISKCON devotees came to the Kentucky State Fair for the purpose of engaging in SANKIRTAN. SANKIRTAN is an activity of proselytizing and alms or donation solicitation. It is customary to exchange literature, candy, incense or flowers for the donations. The activity has been held to be a religious ritual in numerous federal cases. See, for example, *United States v. Silberman*, 464 F.Supp. 866 (1979 M.D.Fla.). The activities began on August 17, 1978, and continued for several days. The group raised approximately $5,500.00.

This action began on August 24, when the Commissioner of Revenue petitioned the court to enjoin ISKCON from making retail sales without a sales tax permit, and a temporary restraining order was issued. The Department of Revenue also issued a jeopardy assessment against ISKCON in the amount of $10,000.00 pursuant to KRS 139.150.

No protest was made by ISKCON, and no effort was made to utilize or exhaust the administrative remedies provided by KRS 131.110. Notice of the restraining order was served on ISKCON on July 3, 1979, through the office of the Secretary of State. In August of 1979, ISKCON moved for a dismissal of the restraining order to which the Department responded with a motion for a temporary injunction. The latter was granted on August 8, 1979.

Both parties thereafter filed affidavits and memoranda and moved for a summary judgment. The court granted judgment in favor of the Commonwealth on September 10, 1979, based on the fact that the appellant had failed to exhaust the administrative remedies and because it was conducting "sales" without paying the sales tax which

is not a constitutionally mandated religious privilege.

█ ISKCON first argues that the trial court erred in granting a summary judgment for the Commonwealth because a genuine issue of material fact exists as to whether it had made a retail sale. Although both parties moved for a summary judgment, there is nevertheless a genuine issue of fact on that point. The only evidence of a sale was presented by the affidavit of the Director of the Sales and Severance Tax Division of the Department of Revenue when he stated the ultimate fact that "The affiant states that the defendant made retail sales at the 1978 Kentucky State Fair and Exposition Center without a sales tax permit." He provides no further detail as to how he obtained this information or what specifically was done that constituted a sale. ISKCON, however, provided the counter-affidavit of Frank Lenna, who stated that he was the leader of the devotees who came to Kentucky and that they engaged in proselytizing and solicitations, but that they made no sales. They distributed books, flags, incense and flowers gratuitiously and for donations.

If we accept the facts as presented by ISKCON, and if we construe them against the Commonwealth as required by CR 56, we cannot conclude as a matter of law that ISKCON engaged in selling at retail. KRS 139.100, 139.110, and 139.120. On this basis, the summary judgment must be reversed and the case remanded for further proceedings to determine whether ISKCON made "retail sales" at the Kentucky State Fair.

We are also faced with the question of whether the failure of ISKCON to protest the assessment through the administrative process forecloses judicial review. KRS 131.110 provides that an assessment shall be final, if it is not protested in writing to the Department within thirty days from the date of notice. This was not done.

█ There are several exceptions to the requirement that one must exhaust his administrative remedies before obtaining judicial review. One of those applies when the constitutionality of an assessment is challenged. 2 Am.Jur.2d *Administrative Law* § 603. See also *Ballard County v. Citizens State Bank*, Ky., 261 S.W.2d 420 (1953).

█ The trial court, in a sense, granted judicial review and determined that, since the activity was a sale, the tax was not imposed on a constitutionally mandated privilege. We agree that the activity of selling at retail by any religious organization is not a constitutional privilege. The right to proselytize, evangelize, distribute literature and to provide tangible personal property for donations is privileged, however, and no license or tax may be required. *Silberman, supra,* and *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). SANKIRTAN has been determined to be an inextricable part of the Hare Krishna religion and if it is conducted in a manner other than by "selling," it is protected and privileged by the First Amendment of the United States Constitution.

This case is therefore reversed and remanded for further proceedings to determine whether the activities of ISKCON at the Kentucky State Fair in August of 1978, constituted sales at retail. If it can be determined that the methods amounted to "retail sales", they were taxable and the assessment and the injunction must stand. If otherwise, the assessment is void and the injunction must be vacated, except that ISKCON may be required to obtain a sales tax permit and collect and pay sales taxes in the event it actually sells merchandise in the future.

All concur.