**Jack PARRENT, Property Valuation Administrator, Franklin County, Kentucky et al., Movants,**

v.

**Ben F. FANNIN et al., Respondents.**

Supreme Court of Kentucky.

May 26, 1981.

William P. Sturm, Chief Counsel, Nathan Goldman, Staff Atty., Legal Division, Dept. of Revenue, Frankfort, for movants.

Joseph J. Leary, Frankfort, for respondents.

David Rubenstein, John Rosenberg, Appalachian Research & Defense Fund of Kentucky, Inc., Prestonsburg, for Concerned Citizens of Martin County, Inc. amicus curiae.

LUKOWSKY, Justice.

On or about January 18, 1980, the Department of Revenue informed the Franklin County Property Valuation Administrator that the 1979 assessment of real property in his county was at that time approximately 82% of its estimated 1980 fair cash value. According to the record the Department considered inflation and sales of Franklin County real estate in 1979 in formulating its ratios. The purpose of the Department's sending this information was to aid the PVA in assessing his county's real property at its fair cash value for the eventual preparation of the 1980 tax bills. KRS 131.140(2) and 132.420(1). The PVA thereafter assessed real property in Franklin County with a view that at least some was undervalued for tax purposes.

On or about May 2, 1980, the PVA sent notices to the respondents who owned real property which he had assessed at a greater value than in 1979. The increases in their assessments ranged from 1% to 400%. The notices, which were sent pursuant to KRS 132.450(4), stated that "any taxpayer aggrieved by an assessment made by the Property Valuation Administrator may appeal to the Board of Assessment Appeals as provided in KRS 133.120(1), by filing a letter or petition, stating the reasons for appeal and their opinion of the fair cash value, with the county clerk during the five days in which the inspection period is held." [1] KRS 133.045 stipulated that the inspection period should begin on the first Monday in June which in 1980 was June 2.[2]

On May 19, 1980, the respondents filed this suit in Franklin Circuit Court seeking a declaratory judgment that their 1980 real property assessments violated Section 171 of the Constitution of Kentucky. The trial court granted them relief on this basis and ordered that the 1980 Franklin County tax bills be based on the 1979 real property assessments with exceptions for real property which was sold or significantly improved during 1979 or whose characteristics changed during 1979.[3] The Court of Appeals affirmed the trial court's judgment. By an order dated November 21, 1980 we granted discretionary review, but declined review of that part of the judgment covering the 1980 tax bills. In all other respects, we reverse the judgment of the trial court

---

1. KRS 133.120(1) was amended effective June 15, 1980 to provide a twelve-day inspection period.

2. KRS 133.045 was amended effective June 15, 1980 to begin the inspection period on the fourth Monday in May.

3. Apparently these exceptions did not apply to the respondents because they suggested them to the court.

and the decision of the Court of Appeals and remand the cause to the Franklin Circuit Court with directions to enter a judgment consistent with this opinion.

Property taxation in this Commonwealth is primarily controlled by two sections of our constitution. Section 171 states in part that "[t]axes . . . shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax. . . ." This section gives to the General Assembly "the power to divide property into classes and to determine what class or classes of property shall be subject to local taxation." Section 172 prescribes that "[a]ll property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. . . ."

Section 171 means, no more and no less than, that the *rate* of taxation must be the same for property of the same class. It permits the fixing of different rates for property of different classes. Section 172 contains no such variable. It imposes a single criterion for the *assessment* of all property—fair cash value. Simply stated, Section 171 insures uniform rates of taxation while Section 172 insures a uniform standard of assessment for taxation.[4]

■ This comparison of Sections 171 and 172 is elementary, but apparently necessary to understand the fallacy in the reasoning of the trial court and the Court of Appeals. These courts found the 1980 assessments of the respondents' properties void as violative of Section 171 because the increases which ranged from 1% to 400% were prima facie evidence of nonuniformity of assessment. The courts unfortunately misconstrued and intermingled the taxation concepts of Sections 171 and 172 to reach this decision.

Section 171 does not apply to the assessment process and there is no prima facie violation of Section 172. Section 171 merely compels the legislative bodies which fix tax rates to fix a uniform one for property of the same class. Section 172 compels those who assess property for taxation to use a uniform criterion, i. e., fair cash value. To achieve this standard variations in the increase of individual assessments are to be expected. Judge Wilhoit in his dissent in the Court of Appeals stated the proposition aptly:

> "It stands to reason that if a particular parcel were greatly underassessed in 1979 and then assessed at its fair cash value in 1980 the percentage of increase in the assessment of that parcel would be many times greater than that of another tract which was assessed at, or near, its fair cash value in 1979."

It is beyond cavil that not all parcels of real estate are worth the same amount of money and Section 172 does not require that they be assessed for the same amount of money. What it does require is that each be assessed for the amount of money it would bring at a fair voluntary sale. The uniformity insured is not uniformity of value but is uniformity of standard of assessment. Consequently, the respondents' complaint is winnowed to the claim that their new assessments are in excess of the fair cash value of their real property. See *Standard Oil Co. v. Boone County Board of Supervisors*, Ky., 562 S.W.2d 83 (1978). This claim is a peculiar grist for the mill of the county board of assessment appeals. KRS 133.120.

■ For two reasons the respondents in this case were allowed to bypass the administrative remedies provided by KRS 133.120 and 131.340 for taxpayers who believe their property has been assessed at more than its fair cash value. The trial court found a constitutional violation on the face of the respondents' complaint. The Court of Appeals opined that the remedies were "inadequate to properly adjudicate the grievances of each member of the class within the necessary time limitations." Neither situation exists here. The respondents should

---

4. Tax revenue equals rate of taxation times assessment for taxation. Because of the restrictions imposed on tax revenue increases by

KRS 132.020 through 132.028, the effect of increases in assessments will ordinarily be softened by reductions in rate.

not have been permitted to avoid the well established requirement that a taxpayer must exhaust his administrative remedies before resorting to the courts. *Tharp v. Louisville & Nashville Railroad Co.*, 307 Ky. 322, 210 S.W.2d 954 (1948).

As demonstrated above, the record does not reveal a prima facie constitutional violation. In addition, the exception found in *Harrison's Sanitarium, Inc., v. Commonwealth, Department of Health*, Ky., 417 S.W.2d 137 (1967), heavily relied on by the respondents, does not apply to this case. In *Harrison* we recognized that a "party may have direct judicial relief without exhaustion of administrative remedies when there are no disputed factual questions to be resolved and the issue is confined to the validity of applicability of a statute or ordinance." 417 S.W.2d at 138. This case involves nothing but factual questions—were the respondents' respective properties assessed in excess of their fair cash value by the PVA.

We are similarly at a loss to understand the Court of Appeals' opinion that the administrative remedies available to the respondents were inadequate. These taxpayers received notices of the increases in their assessments on or about May 2, 1980. The notices gave them ample information of the procedure they could pursue to correct any mistake in their assessments. The time periods provided by KRS 133.120, 133.045 and 133.030 were adequate for the respondents to appeal to the board of assessment appeals by filing a letter or petition protesting the increases in assessments and for the board to adjudicate the claims.[5] Consequently, the respondents should not have been permitted to pursue their cause in the courts before exhausting their administrative remedies.

The judgment of the Franklin Circuit Court and the decision of the Court of Appeals are reversed and the cause is remanded to the trial court with directions to enter a judgment consistent herewith.

All concur except CLAYTON, J., who dissents.

CLAYTON, Justice, dissenting.

I agree with the circuit court and the Court of Appeals. Under the mandate of § 171 of the Kentucky Constitution, the burden of taxation must be uniform upon all property of the same class. Likewise, § 172 clearly states that assessments shall be based upon fair market value. This court has said that the failure to uniformly assess property under the "fair market value" standard violates the constitutional directive and raises a serious equal protection question. *McDevitt v. Luckett*, Ky., 391 S.W.2d 700 (1965).

The problem lies with the difficulty in computing an assessment which accurately represents fair market value. Geographical location, land use, real estate market conditions, and numerous other factors all dictate how much, if at all, land values will fluctuate. The goal of a uniform fair market value assessment may be in fact unattainable.

After hearing extensive evidence presented by both the taxpayers and the Department of Revenue, the special judge concluded that the Department's assessments exceeded the fair market value of the land in question. Hence he properly determined those assessments to be unconstitutional and void. *See Fitzpatrick v. Patrick*, Ky., 410 S.W.2d 143 (1966).

Having declared the assessments void, the trial court faced the question of an adequate remedy. Accordingly, he ordered that the 1979 assessments be used as the basis for the 1980 ad valorem tax bills. Under the circumstances the trial judge used a practical analysis in arriving at a solution to the assessment dilemma.

I would affirm the judgment of the circuit court and the decision of the Court of Appeals.

---

5. Review of such claims can not be commenced by the board prior to the second Monday in June, which in 1980 was June 9. KRS 133.030.