Michael DOLAN, PVA, Charles Baesler, County Court Clerk, Lones Taulbee, Sheriff and Department of Revenue, Commonwealth of Kentucky, Appellants,

v.

Walter G. LAND, Annie W. Brakefield, Richard Featherston, David Biddle, Allen Gibson Carr, and Thomas V. Lynch, on Behalf of Themselves and all Others Similarly Situated, Appellees.

Supreme Court of Kentucky.

Feb. 16, 1984.

As Modified on Denial of Petition for Extension of Opinion May 10, 1984.

Nathan Goldman, Legal Services Section Revenue Cabinet, Frankfort, J.B. Murphy, Asst. County Atty., for Fayette County, Lexington, for appellants.

Charles R. Hembree, Kathleen Harris, Kincaid, Wilson, Schaeffer & Hembree, Lexington, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a judgment entered October 27, 1982, determining that the method of assessment by the Fayette County Property Valuation Administrator for agricultural and horticultural land was unconstitutional. The circuit court also held KRS 132.010(9), 132.010(10) and 132.-450(2)(a) unconstitutional.

The issues presented are whether the circuit court erred when it held the method of assessment to be unconstitutional, whether it erred when it found that the Department of Revenue had failed to equalize the assessments of agricultural and horticultural property, whether the statutes were unconstitutional, and whether it was error to allow the use of the 1980 assessments instead of the 1981 valuations for the tax year of 1981.

■ The method employed by the Fayette County PVA in assessing agricultural lands did not achieve the result required by Section 172A of the Kentucky Constitution in that it did not result in an equal tax burden. This constitutional provision was adopted in 1969 in order to remove agricultural land from the fair-cash value standard required by Section 172 of the Constitution. Section 172A provides a standard of assessment of the value of agricultural land in the same manner that Section 172 provides a standard for other taxable property. This Court has previously properly required that the fair cash value standards be applied uniformly. *Parrent v. Fannin*, Ky., 616 S.W.2d 501 (1981). This Court indicated that the uniformity required is not a uniformity of value but is one related to the standard of assessment. Section 172 of the Constitution is subject to the same requirements of uniformity as Section 172A because both are constitutional provisions for assessing property.

■ Sections 171, 172 and 172A of the Constitution are to be interpreted together. There is a violation of constitutional rights if the effective tax rate is not uniform and thereby results in an unequal tax burden. Any method of assessment which fails to follow the constitutional directions and accordingly does not produce an assessed value based on agricultural use of each individual parcel, violates the constitution. There can be no mass production method or formula to achieve a quick result. The income producing capacity of land is not the only factor to be considered in establishing the value of the property. *See Kentucky Board of Tax Appeals v. Gess*, Ky., 534 S.W.2d 247 (1976).

■ Although property valuation administrators throughout the state do not need to use the same method of arriving at an assessment, whatever method is used must result in a uniform standard of assessment whether the property is agricultural or residential. Section 174 of the Kentucky Constitution says that all property shall be taxed in proportion to its value.

■ A careful examination of the record indicates that the method used by the Fayette County PVA for 1981 resulted in farm property being assigned a value based on general averages rather than an individual and specific value related to the agricultural purpose for which it was used.

A review of the evidence indicates that the deputy valuators did not physically inspect the land but merely looked at the farm for a comparison with the contour maps in the PVA office. Evidently, the classes of value were assigned on a rotation basis for which there is no supporting document or schedule. The testimony of the PVA indicates that he relied solely on what he considered to be the income producing capacity of the acreage.

■ The use of mathematical formula to arrive at a result may be proper as long as the procedure adopted does not produce an unfair or unequal valuation. Here the formula was applied mechanically and failed to consider the particular individual characteristics of specific farm property. The appellants' citation to *Borders v. Cain*, Ky., 252 S.W.2d 903 (1952), is not persuasive. The method used here, even though it was the same method used for all agricultural land in the county, was improper because it failed to value the property on the basis of uniform standards and did not result in an effective tax which was equally burdensome on all farm taxpayers.

The method used by the PVA could be valid as to individual properties only if it were adjusted to take into account the specific characteristic of each farm. The PVA made no effort to identify the different types of land or soil comprised in each individual farm so as to produce a more accurate assessment of the true value. No such individual adjustments were ever made.

There is evidence of probative value in the record that the soil capabilities and slope of the land are important in determining the income producing capacity of the land and that no one type of soil is limited to any one sector of the county.

As observed in *Gess, supra,* the process of assessing property is not easy, but difficulty cannot serve as a justification for deviating from constitutional requirements. The method used by the PVA was not constitutionally sound.

■ Turning now to KRS 132.010(9) and (10) and KRS 132.450(2)(a), we are of the opinion these sections of the statute do not violate the Constitution of Kentucky. Dwelling houses are to be assessed at fair cash value, and the income and acreage standards to qualify for "agricultural land" or "horticultural land" are not unreasonable.

■ KRS 132.010(9) excludes "residences" from the definition of "income-producing improvements." But "residences" thus excluded have the narrow statutory definition given to the term "residential unit" in KRS 132.010(14). "Residential unit" is defined in KRS 132.010(14) as "all or that part of real property occupied as a permanent residence of the owner." So defined it follows that housing located on farm property occupied by a nonowner and used in income producing activity of the farm as dwellings for tenant farmers and farm workers is not a "residential unit." Such dwellings are "income-producing improvements" and a part of the agricultural land for ad valorem assessment purposes.

■ The circuit court properly determined that the correct remedy was the use of the 1980 assessments for the subject property for the tax year 1981. The circuit judge determined that the assessment for the year 1981 was unconstitutional and void. There is no authority to support the appellant's contention that the PVA is entitled to belatedly assess the subject proper-

ty for 1981 taxes. KRS 132.220(1) clearly states that property shall be evaluated as of January 1. We find no reason to disturb the practical determination by the circuit court that the 1980 assessment shall be followed for the tax year of 1981.

■ The question of whether the property owners failed to properly exhaust their administrative remedies is not before this Court. It was correctly decided by the circuit court in overruling a motion to dismiss. It should be pointed out that *International Society for Krishna Consciousness, Inc. v. Commonwealth*, Ky.App., 610 S.W.2d 910 (1980), held that when the constitutionality of an assessment is challenged, judicial review may be obtained without first exhausting administrative remedies. We find no reason to disturb that decision in this case.

■ There is no validity to the holding of the lower court that, before the assessments of agricultural value in Fayette County could be upheld, the Department of Revenue is required to prove that these assessments impose the same tax burden on the farm owners in Fayette County as is imposed on the farm owners in all other counties. We are cited no statute, no constitutional requirement and no case law to support this position, for the simple reason that there are none. The burden on the Department of Revenue is simply to assure that *all* property in this state is assessed fairly, according to its value. If this is done, the tax burden will be equally shared. As a matter of fact, the issue should probably not have been raised. This was an action to protest the constitutionality and application of certain statutes and the assessment carried out thereunder. There was no exhaustion of administrative remedy and, thus, no opportunity presented for the Department of Revenue to make comparative analysis of any particular property. That part of the judgment of the circuit court is reversed.

It is the holding of this court that the method employed by the PVA to assess agricultural and horticultural land in Fayette County is unconstitutional. The cir-cuit court was correct in applying the 1980 assessments for the tax year of 1981.

The judgment of the circuit court is affirmed in part and reversed in part.

STEPHENS, C.J., and LEIBSON, STEPHENSON and WINTERSHEIMER, JJ., concur.

GANT and VANCE, JJ., dissent by separate opinions.

AKER, J., joins GANT, J., dissenting.

GANT, Justice, dissenting.

In order to properly evaluate this case, we must carefully examine two factors. First, we must look at the constitutional provisions relating to the tax assessment and the statutes enacted pursuant thereto. Second, we must scrutinize the method of appraisal utilized herein by the Fayette County Property Evaluation Administrator.

The basic sections of the Constitution of Kentucky relating to property taxes have always been § 171, § 172, and § 174. In 1969, the voters ratified § 172A, which mandated that the General Assembly shall provide for the assessment of agricultural and horticultural land according to its value for such use. No specific formula for such assessment was included in the amendment, but left to the General Assembly. Following its constitutional direction, the General Assembly enacted, among other statutes, KRS 132.010(9), (10), and KRS 132.450(2)(a). KRS 132.010(9) defined agricultural land as any tract of land containing ten or more contiguous acres which was used for farming, livestock or poultry, or which was under any state or federal agricultural program, with a prescribed income formula. Horticultural land was defined in KRS 132.010(10) as a tract of land of five or more contiguous acres used in the production of fruits, nuts, vegetables, flowers or ornamental plants, which produce a specified annual gross or per-acre income. Both these sections excluded from the assessment the residences on the land.

KRS 132.450(2)(a) related further to the residential exception from assessment for agricultural and horticultural purposes, providing that the land used by the residence, lawns, driveways, flower gardens, swimming pools, etc. should be excluded when assessing *farm land;* and that the acreage underlying farm buildings, greenhouses, ponds, lakes, streams, irrigation systems, etc. should be included when assessing the *land.*

We next turn to the method of assessment utilized by Michael Dolan, Fayette County PVA, who is acknowledged as an expert in his field of appraisal and who is personally familiar with each farm in Fayette County. Mr. Dolan first obtained the Fayette soil survey maps and books from the U.S. Soil Conservation Service (SCS). These contain a complete analysis of every farm in the county according to soil type and slope. The information, in actuality, relates to which crops can be best planted in each area and the suggested rotation in planting of these crops on each farm, or the rotation between crops and pasture. From the College of Agriculture at the University of Kentucky, Dolan obtained all pertinent data relating to crops grown in Fayette County and the type of soil and slope best suited for each. These records included cost of planting and return, or yield, on each crop.

Armed with this information, with the plats, photographs and data in his own office, Dolan dispatched field appraisers, who personally viewed each tract in the county. They verified the accuracy of the SCS surveys on each farm and measured and appraised each residence separately.

Again utilizing the combined data thus gleaned and relying upon his own expertise, Dolan divided all the farms in the county into four general categories and, utilizing a formula based upon a capitalization of 10½% expected return on investment, arrived at a per-acre evaluation on each farm. To that valuation, he added the value of tobacco for each farm to which a tobacco base had been allotted, if any, and the value of any residence and any appurte-

nances thereto, and arrived at an assessed value for each farm in Fayette County.

When the method utilized in Fayette County is thoughtfully compared with that in other counties, it is clear that it is an excellent analysis and far exceeds the windshield type which has been approved in many instances. The only failure encountered in the method utilized herein was the failure to separately appraise such improvements as tobacco barns, stables, horse barns, silos, hay barns, equipment housing, etc. Although the statutes relating to the assessment required that the land occupied by such improvements be included in the acreage, it did not mandate exclusion of the improvements themselves. It is obvious that farm land with improvements is more valuable than farm land without. I would affirm that portion of the lower court, and no other.

The obvious purpose of section 172A is to encourage perpetuation of property used for agricultural and horticultural purposes and to provide that it be so assessed, and not valued at some speculative future potential use for commercial or subdivision purposes. That this was accomplished herein was clearly verified by one of the appellees who testified that his farm 10 or 12 miles out of town was assessed at the same value as one adjoining the developed area. This equality was a reason for complimenting the PVA, not for chastising him, as it is exactly what section 172A is all about.

The lower court, in declaring KRS 132.-010(9), (10) and KRS 132.450(2)(a) to be unconstitutional, stated that section 172A was self-executing. This is erroneous. Although it is self-executing substantively, it is not so procedurally. Indeed, by its very wording, the procedural aspects are vested in the General Assembly. *See Kentucky Board of Tax Appeals v. Gess,* Ky., 534 S.W.2d 247, 250 (1976); *Miller v. Robertson,* 306 Ky. 653, 208 S.W.2d 977 (1948); *Shipp v. Rodes,* 196 Ky. 523, 245 S.W. 157 (1922); *Gay v. Brent,* 166 Ky. 833, 179 S.W. 1051 (1915).

The lower court and majority opinion offer no remedy to their imagined inequities, but merely cast the PVAs adrift on the sea of quandary, without rudder or helmsmen. I would affirm the lower court in its finding that the agricultural and horticultural improvements must be included in the assessment, but would reverse on all other issues. I would remand for an adjustment which would include these improvements and, once made, utilize the adjusted assessment for the year 1981, and not the assessment for 1980 as mandated by the lower court and the majority opinion.

AKER, J., joins in this dissent.

VANCE, Justice, dissenting.

I join in the dissent of Justice Gant and in addition I would reverse the judgment because none of the appellees exhausted the administrative remedies which provide for relief from improper assessments. K.R.S. 133.120. Appellees contend that exhaustion of administrative remedies is not required where the constitutionality of an assessment is questioned. *International Society for Krishna Consciousness, Inc. v. Commonwealth,* Ky.App., 610 S.W.2d 910 (1980). That case had nothing to do with the method of assessment of value of real property for ad valorem tax purposes. It dealt with one assessment of liability for underpayment or nonpayment of sales tax in a case where it was contended the tax was unconstitutional because no sale was involved. It is distinguishable on the facts and is not authority here.

This court has decided two cases directly on this point. In *Kentucky Board of Tax Appeals v. Gess,* Ky., 534 S.W.2d 247 (1976) the matter came before the court after the parties had properly exhausted their administrative remedies by appealing to the County Board of Assessment Appeals. In *Parrent v. Fannin,* Ky., 616 S.W.2d 501 (1981), it was held that the aggrieved taxpayers could not pursue a challenge to a tax assessment without first exhausting their administrative remedies.

Here, as in *Parrent,* there is no basis for appellees to complain unless their property has been assessed too high. They did not so contend through appeal to the County Board of Assessment Appeals and have offered no proof to that effect in this litigation. They simply claim that the method of assessment used by the P.V.A. would necessarily result in some inequitable assessments without showing that any of them have been adversely affected.

Tax assessment is not an exact or perfect science. Section 172 requires assessment for fair cash value, *estimated* at the price the property would bring at a voluntary sale. Nobody contends the fair cash value can be perfectly *estimated* even when the P.V.A. has the records of the sales price of comparable property.

The assessment of real property under Section 172A at its value for agricultural or horticultural use is infinitely more difficult and more imprecise because the sales price of comparable land does not necessarily reflect the agricultural or horticultural value of the land.

The plain fact is that there are fewer and fewer sales of property in which the price is not inflated to some degree by factors other than its value for purely agricultural and horticultural purposes. With good roads and the extension of water, electricity, and other utilities into hitherto-remote rural areas, the actual market value of a very substantial percentage of farm property reflects potential uses other than farming. Cf. discussion in *Com., Dept. of Highways v. Siler,* Ky., 411 S.W.2d 937, 938–939 (1967). Whenever farm property has a market value, or actually has sold for a price, greater than is justified by its income-producing capacity, then there is at the very least a strong suspicion that the excess reflects factors other than its value for purely agricultural and horticultural purposes. The excess market value reflected by those potential uses is the precise target Const. § 172A intends to eliminate from the taxing process. *Kentucky Bd. of Tax Appeals v. Gess, supra* at 249.

The P.V.A. in this case made appropriate studies of the productivity of various types of land in Fayette County, he divided the county into four geographic areas in which the land was of a similar type; his deputies visited each farm to ascertain that it conformed to the classification given to the area—and the land was assessed generally upon the basis of its value in relation to its productivity.

While this system may not be perfect, I believe it will come closer to the goal of uniformity than any other which I can envision. Certainly no better method has been suggested by appellees. And if any inequity does result from the method used, it is not too much to ask that those who claim to be aggrieved by the procedure demonstrate that they have been adversely affected by the assessment on their property by use of the administrative procedures provided by law.

While it can be argued with logic that the productivity of any given farm is not necessarily the same as an adjacent farm with the same general slope or contour of land, or of another farm a mile down the road— it can be argued with the same logic that different fields on any farm may not have the same fertility, or for that matter, each acre in a field might be more or less fertile than an adjoining acre. These factors do not render unconstitutional a reliance upon general characteristics of land which are a reliable index of value although not absolutely perfect in every case.

Because it is impossible to attain absolute perfection in assessments, I believe procedures which, when uniformily applied, are likely to reach an equitable result should pass constitutional muster and if any taxpayer is aggrieved thereby, he should exhaust administrative remedies available to him before resort is allowed to the courts.