REVENUE CABINET, COMMON-WEALTH OF KENTUCKY, and Kim Burse, Secretary of the Revenue Cabinet, Appellants,

v.

Robert B. GILLIG, Joseph E. Stephenson, Six J. Corporation, and Kentuckians for the Commonwealth, Inc., Appellees.

No. 95–SC–1056–DG.

Supreme Court of Kentucky.

Sept. 4, 1997.

Rehearing Denied Jan. 22, 1998.

A.B. Chandler, III, Attorney General State Capitol, Frankfort, Debra Hays Eucker, Revenue Cabinet Division of Legal Services, Frankfort, for appellants.

James B. Stephenson, Frankfort, Jill Hall Rose, Lexington, for appellees.

Joe Francis Childers, Jr., Lexington, for Kentuckians for the Commonwealth, Inc.

STEPHENS, Chief Justice.

This appeal arises from a summary judgment granted in favor of the Revenue Cabinet [hereinafter "Cabinet"] in an action challenging the constitutionality of the Cabinet's method of assessing the value of unmined coal. The Court of Appeals reversed and we granted discretionary review.

Prior to 1989, unmined coal in Kentucky had been assessed for tax purposes by the property valuation administrator [hereinafter "PVA"] in each county. In July 1988, the Franklin Circuit Court entered a temporary injunction holding that the centralized assessment of unmined coal by the Cabinet was necessary and proper. To comply with the temporary injunction, the Cabinet set up a special mineral valuation section within the Department of Property Taxation and began to develop a program to centrally assess unmined coal. After researching the matter, the Cabinet decided to adopt and implement a Geographic Information System [hereinafter "GIS"] for its future assessment of unmined coal. The GIS is a computerized mapping approach to valuation that ties together spatial three dimensional information with ordinary property attribute data. Because the system is very complicated, costly, and time-consuming, the Cabinet claims it was necessary for it to develop an interim method for the assessment of unmined coal to be used until such time that the GIS was operable and in place.

The interim method of assessment was based upon a self-reporting approach using an informational return form that was mailed to owners of unmined coal, coal operators, lessees and permit holders. On these returns, the taxpayers were instructed to report ownership information, the number of acres of minable and merchantable coal, the average seam thickness, the location of the coal by county, and whether the coal was idle, permitted or permitted and producing. All of these returns further required the taxpayers to provide "any additional information (specific or general) which would aid in the valuation of this coal resource."

Once the Cabinet obtained the information from the taxpayer it calculated the value of the unmined coal according to the following formula:

Number of minable and merchantable acres × clean coal thickness of seam in inches × 135 tons/acre-inch × $.36 per ton—for permitted and producing coal in Eastern Kentucky; $.22 per ton—for permitted coal in Eastern Kentucky; $.18 per ton—for inactive coal in Eastern Kentucky; $.16 per ton—for permitted and producing coal in Western Kentucky and Greenup, Carter, Boyd and Elliott Counties; $.10 per ton—for permitted coal in Western Kentucky and Greenup, Carter, Boyd and Elliott Counties; $.08 per ton—for inactive coal in Western Kentucky and Greenup, Carter, Boyd and Elliott Counties.

The Cabinet did not make any independent survey or conduct any personal inspection on the property. This interim method of assessment was used by the Cabinet for tax years 1989, 1990 and 1991.

Appellees in this case are owners of tracts of coal in Pike County which were assessed according to the interim method. On October 30, 1991, appellees brought this action in the Franklin Circuit Court against the Cabinet challenging the constitutionality of this interim method of assessment. Appellees argued in their motion for summary judgment that because the interim method does not consider certain individual characteristics of the property which affect or could affect its value, the Cabinet's interim method of assessment is arbitrary and does not accurately reflect the coal's fair cash value in accordance with Kentucky's constitution and this Court's decision in *Dolan v. Land,* Ky., 667 S.W.2d 684 (1984). On April 13, 1994, the circuit court granted the Cabinet's motion for summary judgment, holding that the interim

method of assessment was neither arbitrary nor unconstitutional because the method was fairly designed to reach, and did reach, an approximation of the fair and voluntary sale price.

The Court of Appeals reversed the circuit court's decision finding the Cabinet's interim method of valuing unmined coal to be unconstitutional based upon its failure to consider many of the individual characteristics of the property which most definitely affected its value. The Court of Appeals further stated that it could not distinguish the case from this Court's decision in *Dolan, supra,* and, consequently, directed the Cabinet to reassess all coal properties for tax years 1989, 1990 and 1991 and to provide a refund pursuant to KRS 134.590(1), if it was determined upon reassessment that the taxpayer's unmined coal had been overvalued.

Appellant, the Cabinet, now argues before this Court that the Court of Appeals erred in reversing the decision of the Franklin Circuit Court by disregarding the prior case precedent of this Court which granted tax assessments and methods of assessment prima facie validity and imposed upon the taxpayer the burden of proving that an assessment overvalues the property. Appellant further asserts that the interim method meets the requirements set forth in *Dolan, supra,* and that adequate remedial relief was available because KRS 131.110 allows taxpayers to protest the assessment and the protest essentially forces the Cabinet to consider any factor related to the value of the property. Finally, appellant contends that an appraisal by the State for tax purposes need only be an estimate or approximation of fair cash value and that it cannot possibly consider all of the specific characteristics of the property. *See Board of Sup'rs. v. State National Bank of Frankfort,* 300 Ky., 620, 189 S.W.2d 942 (1945), *overruled on other grounds* by *Citizens Fidelity Bank & Trust Co. v. Reeves,* Ky., 259 S.W.2d 432 (1953).

The Court of Appeals and the appellees, relying heavily on *Dolan, supra,* contend that the Cabinet did not assess their unmined coal at its fair market value because it did not take into account the individual characteristics of the property related to its value which include:

1. The number of merchantable and minable coal seams in the tract.

2. Presence or absence of impurities in the coal seams such as slate, bone coal, laminated coal, etc.

3. Location of tract with reference to access to highways and railroads.

4. The analysis and chemical composition of the coal, particularly the percentage of ash, sulphur, moisture, volatile matter and fixed carbon, the number of British Thermal Units, and coke button.

5. Whether according to analysis the coal seam is of coking by-product and metallurgical quality or only suitable for steam purposes.

We reverse the decision of the Court of Appeals based on Section 172 of the Kentucky Constitution which provides as follows:

All property not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, *estimated* at the price it would bring at a fair voluntary sale.

(Emphasis Added).

While the aforementioned factors listed by appellees may affect the value of their unmined coal in varying degrees, we agree with the Cabinet that all of these factors and any other factors which may affect the value of the unmined coal must be considered by the Cabinet in a fee-type appraisal in order for the estimate of fair cash value to pass constitutional muster. Even counsel for appellees stated on the record in the proceeding below as follows: "I am sure you all are doing the best you can under adverse circumstances. I take the position that nobody can really assess coal."

Basically, the appellees' assertions are contrary to generally accepted property taxation principles which have been consistently followed by the Cabinet in the assessment of all real and personal property in Kentucky. The level of accuracy which may be achieved by a private appraiser in a fee-type appraisal or a "single property appraisal" of a parcel of real property simply cannot be attained by the tax assessor nor has it

ever been required in the valuation of any property in Kentucky for taxation purposes. Accordingly, for taxation purposes, a tax assessor is allowed to use mass appraisal techniques. Under the mass appraisal approach, while individual characteristics of each property are considered, not all of a particular property's characteristics are considered—just those factors which allow the assessor to make a logical estimate of the property's value.

For example, in valuing a residential property, if it has been determined that the number of bedrooms, bathrooms, size, and location of the home are factors which provide a logical indication of a property's fair cash value, under a mass appraisal approach, the assessor would obtain information about these characteristics for each property and value similar properties accordingly. On the other hand, in a fee-type appraisal, or a "single property appraisal", the private appraiser would not only consider these characteristics, but would also consider, for example, the condition of the heating and cooling systems, the condition of the interior, any added extras in the home and all other characteristics of the home which would affect its value in any way.

Kentucky courts have recognized in several cases that the level of accuracy achieved by a private fee appraiser in valuing a property cannot practically be achieved by the state tax assessor nor is such accuracy even required by Section 172 of the Kentucky Constitution, which specifically provides that fair cash value will be "estimated." Kentucky courts have previously recognized that some amount of inequality in property taxation is inevitable. *See Layson v. Brady,* Ky.App., 576 S.W.2d 223 (1978); *Eminence Distillery Co. v. Henry Co. Board of Sup'rs,* 178 Ky. 811, 200 S.W. 347 (1918). As was specifically stated in *Letcher County Fiscal Court v. State Tax Commission,* 211 Ky. 609, 277 S.W. 988, 991 (1925), "exactitude is not to be expected in tax matters. That is a Utopia which has never been and probably never will be reached." We further asserted in *State National Bank of Frankfort, supra,* "[e]xactness cannot be obtained. Indeed, it is not required, for the Constitution and the

Statutes recognize that only an approximation or estimate is possible."

 Thus, Kentucky law is clear that the accuracy of a private fee-type appraisal is not required in the valuation of real property for taxation purposes. By mandate of this Court in *Gillis v. Yount,* Ky., 748 S.W.2d 357 (1988), unmined coal is to be considered the same as other real property for taxation purposes. Consequently, under the generally accepted mass appraisal approach, the Cabinet is not required to consider all factors that affect the value of unmined coal, only those factors which will allow it to make a logical and reasonable estimate of the property's fair cash value. We note, however, that the factors which the Court of Appeals and appellees assert as important in the assessment of the unmined coal are precisely the kind of information that a taxpayer would provide pursuant to the "additional information" request found in the self-reporting informational return used by the Cabinet.

 Based upon the taxpayer's own information as to the quality of the coal, the quantity of the coal by acre and seam, the level of mining activity on the coal tract, and its location in either the Western or Eastern Kentucky coal fields, the Cabinet formed an estimate of what the market value of such minable and merchantable coal should logically be for tax years 1989, 1990 and 1991. While Sections 2 and 172 of the Kentucky Constitution do require the uniform assessment of property in Kentucky using a property's estimated fair cash value as to the standard of valuation, those constitutional provisions do not guarantee taxpayers that all properties will be valued at 100% of their fair cash value at all times. *See Parrent v. Fannin,* Ky., 616 S.W.2d 501 (1981); *Russman v. Luckett,* Ky., 391 S.W.2d 694 (1965).

 As noted above, the courts have held that it is the tax assessor's duty to estimate what the market value *logically should be*— not to determine what the market value *actually is* for the property. *Fayette County Board of Sup'rs v. O'Rear,* Ky., 275 S.W.2d 577, 579 (1954). While recognizing that the tax assessor's valuation merely reflects an estimation of what the market logically

should be, since at least 1932, the law of Kentucky has also granted the estimated property tax assessment a presumption of validity and has placed the burden of establishing that the assessment was incorrect on the taxpayer. *Evans Oil & Gas v. Draughn,* Ky., 367 S.W.2d 453, 454 (1963). Moreover, in *Hyden v. Breathitt County Board of Sup'rs.,* 244 Ky., 505, 51 S.W.2d 441 (1932), the court explained the taxpayers burden of proof as follows:

> When the property owner is notified of a tentative raise or reduction in his assessment he is thereby informed that in the opinion of the board the assessment which the property owner has turned in does not represent that fair cash value of the property. He may not presume that the board acted arbitrarily, but must assume that it acted at least upon the information the members had concerning the value of the property in dispute. It then devolves upon the property owner, if he feels aggrieved, to produce evidence to convince the board of its error, and *if he fails to so convince* them, he has a full remedy by appeal....

*Id.* 51 S.W.2d at 441–42.

The cases of *O'Rear, supra,* and the more recent case of *Commonwealth v. Kroger,* Ky., 503 S.W.2d 722 (1974), best illustrate the operation of the presumption of validity and the burden of proof in a property tax case. In *Fayette County Board of Sup'rs v. O'Rear,* Ky., 275 S.W.2d 577, 579 (1954), the taxpayer claimed, as do the Appellees in the present case, that the "method or procedure followed by the tax commissioner violat[ed] the 'sole standard' fixed by Section 172 of the Constitution, which is 'fair cash value estimated at the price it would bring at a fair voluntary sale.'" In rejecting the taxpayer's claim, the Court stated as follows:

> In substance, the contention is that the methods employed in assessing must be designed to acquire information as to what the market value actually is, rather than to form an estimate of what the market value logically should be. It is our opinion that an assessment cannot be held invalid merely because of the method employed in making, so long as the method is fairly designed for the purpose of reaching and

reasonably tends to reach an *approximation* of the fair voluntary sales price.

*Id.* at 579 (emphasis added). The court ultimately ruled that the assessment method "had sufficient prima facie validity to require it to be upheld in the absence of a showing by the taxpayer that the assessment exceeded the fair voluntary sale price." *Id.* The court concluded that the taxpayer failed to meet his burden of establishing that the assessment was incorrect and, consequently, the assessment was upheld. *Id.*

Similarly, in *Kroger, supra,* the court ruled that the PVA's assessment formula would meet the presumption of validity set forth in *O'Rear,* however the court went on to state:

> [T]he strength of its prima facie validity is another matter ...
>
> Kroger's evidence ... was fairly indicative of actual sale value as distinguished from purely estimated sales value. In view of the evidence, we cannot say that the Board of Tax Appeals was required to accept the assessment based on the formula.

*Id.* at 724 (citations omitted).

Furthermore, *Dolan, supra,* does not control the present case. In *Dolan,* which was reaffirmed by *Barrett v. Reynolds,* Ky., 817 S.W.2d 439 (1991) (which struck down a PVA's assessment of real estate in a newly mapped area based upon the use of mathematical formula), the Fayette County PVA had divided the farms in the county into four groups based upon information he received from the U.S. Soil Conversation Service and the University of Kentucky College of Agriculture concerning soil types and the land's potential for growing certain crops. *Id.* at 687. Utilizing a formula based upon a capitalization of ten and a half percent expected return on investment, the PVA arrived at a per-acre figure of each farm based upon the type of crops which were best suited to the soil in that part of the county as indicated by the soil survey maps. *Id.* at 689.

In finding this method to be unconstitutional, we stated that the PVA's method "resulted in farm property being assigned a value based on general averages rather than an individual and specific value related to the agricultural purpose for which it was used."

*Id.* at 687. Ultimately, we held in *Dolan* that an assessor may not base an assessment for a particular property solely upon general geographic and geologic information which is available to him without first comparing this information to the individual property itself. *Id.* at 689.

To state it more clearly, while *Dolan* required that the tax assessor consider actual characteristics of the property, it did not require that the tax assessor consider every conceivable characteristic that might affect the value of the property or determine what the fair market value *actually is* for the property. In addition, our decision in *Dolan* failed to overrule the prior precedent of this Court which granted assessments and assessment methods a presumption of validity and placed the burden of proving the incorrectness of the assessment upon the taxpayer.

■ In the present case, the appellees presented no evidence in the circuit court that the Cabinet's estimate of the fair cash value for their property or any other property was incorrect. In fact, appellees stated in their discovery responses, "Plaintiffs do not have an opinion as to the fair cash value of any of the above tracts of coal." As we previously stated, without such evidence, the Cabinet's method of assessment was entitled to prima facie validity under Kentucky law. As the Franklin Circuit Court concluded, because the interim method was a self-reporting approach, it was by definition, sufficiently "individualized" to meet the requirements of the Kentucky Constitution as construed by this Court in *Dolan*. Hence, the Franklin Circuit Court's ruling that the interim method was fairly designed for the purpose of reaching an approximation of the fair voluntary sales price of unmined coal is consistent with Kentucky's caselaw and constitution and should be upheld.

■ Finally, we note that the appellees in this case and any other taxpayers who believed their valuations were in excess of fair cash value, had the right to meet with the Cabinet to discuss: (1) the assessment; (2) the right to formally protest the assessment as provided by KRS 131.110; and (3) the right to take an appeal from any adverse final determination by the Cabinet to the Kentucky Board of Tax Appeals as provided by KRS 131.340. We explained this best in *Parrent v. Fannin,* Ky., 616 S.W.2d 501, 503 (1981), as follows:

> [T]he claim that their new assessments are in excess of the fair cash value of their real property ... is a peculiar grist for the mill of the county board of assessment appeals. KRS 133.120.
>
> ... The respondents should not have been permitted to avoid the well established requirement that a taxpayer must exhaust his administrative remedies before resorting to the courts. *Tharp v. Louisville & Nashville Railroad Co.,* 307 Ky. 322, 210 S.W.2d 954 (1948).

Appellees, herein, were informed of this process in the notice of assessment and in the final ruling issued by the Cabinet. Thus, because appellees had an adequate administrative remedy, this case should have first been decided by the Kentucky Board of Tax Appeals, not the circuit court.

Accordingly, this Court upholds the constitutionality of the method of assessment used by the Revenue Cabinet to value unmined coal for property tax purposes for tax years 1989, 1990, and 1991 because appellees failed to allege or even present evidence in this case that the interim method resulted in valuations which exceeded the fair cash value of their property or that the method was intentionally discriminatory against any person or groups. The interim method was a self-reporting approach and each valuation, therefore, was sufficiently tied to the individual property so as to meet the requirements of *Dolan v. Land,* Ky., 667 S.W.2d 684 (1984). Moreover, any taxpayers, including appellees, who believed their unmined coal properties may have been under or overvalued, had an adequate remedy through the administrative appeal process. Consequently, we reverse the decision of the Court of Appeals and affirm the ruling of the Franklin Circuit Court on this matter.

COOPER, GRAVES, JOHNSTONE, LAMBERT and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents and files a separate dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the Court of Appeals correctly determined that the method of assessing unmined coal used by the Revenue Cabinet violates Section 172 of the Kentucky Constitution.

The trial judge entered a summary judgment in favor of the Revenue Cabinet, but the Court of Appeals reversed, determining that the Cabinet's interim method of valuing unmined coal was unconstitutional and that this case was identical to the case of *Dolan v. Land*, Ky., 667 S.W.2d 684 (1984), which held that a mathematical formula used by a Property Valuation Administrator, and applied mechanically, failed to consider the particular individual characteristics of the specific farm property and resulted in its unfair valuation. *Dolan, supra*, was reaffirmed by this Court in *Barrett v. Reynolds*, Ky., 817 S.W.2d 439 (1991).

The interim method of assessment uses a rigid mathematical formula. It is based on acreage times thickness of the seams depending upon the county in which the coal is located. This is exactly the type of mathematical formula that is denounced in *Dolan*. The mathematical formula used by the Revenue Cabinet in assessing unmined coal does not take into account any of the factors that affect the value of the unmined coal. The Commissioner of the Department of Property Taxation, in his deposition, testified that the various factors which make a difference in the value of seams of coal were not taken into account by the interim method of assessing unmined coal.

A review of the record indicates that the uncontradicted affidavit of Ertel Whitt shows that there are not enough sales of tracts of coal to use a comparable sales method. Ordinarily, operating companies lease a tract of land rather than purchase it. Each tract of coal land is unique and requires taking into consideration all of the factors that affect the value of a particular tract. We must recognize that one of the difficulties facing the Revenue Cabinet in assessing unmined coal is that there is no market for unmined coal. Generally, coal is leased by operating companies, not purchased. Most sales are those of operating companies where an arbitrary figure is applied to the unmined coal in addition to the value of the plant, machinery and equipment. The fact that unmined coal valuation is difficult is no excuse for not using constitutionally mandated procedures.

In determining the fair cash value of a tract of unmined coal, as with any other property, an opinion of the value is determined by an individual who must have some expertise in the valuation technique. This is true of unmined coal, just as it is true for residential or farm tracts. Naturally, an opinion of such value is always an estimate. The problem presented to the Revenue Cabinet is that the record does not indicate that it has anyone among its staff engaged in this process who is acquainted with the unmined coal situation. Some expertise is required in order to give an opinion as to value.

The record reveals that the testimony of the Commissioner states that it would be "absolutely fiscally impossible for the State to attempt to do a detailed single property appraisal on every one of the million and a half parcels of real property in Kentucky." This position would appear to be in direct violation of the principles established in *Dolan*.

The same requirement of individual inspection which is imposed on local PVAs should be required of other state officials. The owner of a tract of unmined coal is entitled to the same consideration as the valuation assessments required to be given to owners of other residential and farm real property. The mechanical use of a mathematical formula violates the requirement of fairness in Kentucky Constitution Section 172 and *Dolan*. The assessment and ultimate taxation of all property must be fair, uniform and conform to constitutional directives.

I would affirm the decision of the Court of Appeals.