**LOUISVILLE EDIBLE OIL PRODUCTS, INC., Appellant,**

v.

**REVENUE CABINET COMMON-WEALTH OF KENTUCKY, Appellee.**

No. 94–CA–2701–MR.

Court of Appeals of Kentucky.

Aug. 29, 1997.

Rehearing Denied Nov. 14, 1997.

Bruce F. Clark, Timothy Kimmel, Frankfort, for Appellant.

Kenton L. Ball, Frankfort, for Appellee.

Before WILHOIT, C.J., and COMBS and MILLER, JJ.

***OPINION***

COMBS, Judge.

Louisville Edible Oil Products, Inc. (LEOP) appeals a Franklin Circuit Court judgment which affirmed the conclusion of the Kentucky Board of Tax Appeals (Tax Board) that the Kentucky Revenue Cabinet (Cabinet) had correctly assessed additional sales taxes owing by LEOP and had correct-

ly denied a refund for taxes previously paid by LEOP. We affirm.

LEOP is in the business of purchasing and processing crude vegetable oil, which it then sells and transports to its customers. In November 1982, LEOP made application to take advantage of the tax exemption provided by KRS 139.480(3). This statute provides a limited exemption from sales and use tax for purchases of energy and energy-producing fuels used by manufacturers, processors, refiners, and miners. Specifically, KRS 139.480(3) exempts:

> All energy or energy-producing fuels used in the course of manufacturing, processing, mining, or refining *to the extent that the cost of the energy or energy-producing fuels used exceeds three percent (3%) of the cost of production.* Cost of production shall be computed on the basis of plant facilities which shall mean all permanent structures affixed to real property at one (1) location[.]

(Emphasis added).

In its application to qualify for the exemption, LEOP included its purchases of crude vegetable oil in its "cost of production" calculation. After reviewing the application, the Cabinet determined that LEOP did indeed qualify for the energy exemption. LEOP proceeded to file its energy annual return in which it requested a refund of sales tax totaling $65,129.00, which it claimed to have paid on energy used at its *facility* in 1983. The refund resulted from LEOP's *excluding* the costs of its crude oil purchases from its "cost of production" calculation.

In the Cabinet's audit to verify LEOP's *modified* method of calculating its "cost of production," the Cabinet determined that all crude vegetable oil purchased by LEOP should be *included* in its "cost of production" calculation. As a result of the recalculated "cost of production," the Cabinet denied LEOP's request for a refund of $65,129.00 for 1983 and assessed additional sales tax of $436,572.56 for 1984, 1985, and 1986.

All of the tax in dispute is directly attributable to the energy exemption issue. LEOP maintains that its "cost of production" for purposes of the energy exemption to the sales tax does not include the costs of the crude vegetable oil it processes. The Cabinet argues otherwise.

As an initial matter, we note that the standard of review of decisions from the Tax Board, previously set forth in KRS 131.370(4), is now found in KRS Chapter 13B. KRS 131.370(1). KRS 13B.150(1) limits a court to a review of the record from the administrative agency unless there is an allegation of fraud or misconduct involving a party. The standard of review appears in KRS 13B.150(2) as follows:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
> 
> (a) In violation of constitutional or statutory provisions;
> 
> (b) In excess of the statutory authority of the agency;
> 
> (c) Without support of substantial evidence on the whole record;
> 
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
> 
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
> 
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
> 
> (g) Deficient as otherwise provided by law.

This section of the statute codifies in one location the several grounds for review of an administrative decision already recognized in Kentucky jurisprudence. *See*, Ky. Const. Section 2; *Reis v. Campbell Co. Bd. of Educ.*, Ky., 938 S.W.2d 880 (1996); *Starks v. Kentucky Health Facilities*, Ky.App., 684 S.W.2d 5 (1984); *American Beauty Homes Corp. v. Louisville and Jefferson Co. Planning and Zoning Comm'n*, Ky., 379 S.W.2d 450 (1964); *Epsilon Trading Co., Inc. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937 (1989).

■ The parties agree that in the case before us, the question to be answered deals with the interpretation of a statute. LEOP's

argument on appeal is that the Tax Board misapplied the law to the facts. The construction and application of a statute is a matter of law and may be reviewed de novo. *Reis, supra* at 886; *Epsilon, supra* at 940.

■ The bone of contention in this case centers on the term "cost of production." LEOP maintains that the Cabinet, the Tax Board, and the circuit court erred in interpreting the term "cost of production" to include the cost of the crude oil it purchases to process for its customers. LEOP argues that it is entitled to exclude from its "cost of production" calculation the cost of the crude oil it processes at its facility because the exemption is claimed only for the operations performed at the Louisville facility—namely, LEOP's *processing* of the crude oil. In other words, LEOP contends that its "cost of production" includes only those expenses associated with converting the vegetable oil from a crude state to a purified state and not the expense involved with the initial acquisition and transportation of the crude oil to its Louisville facility. We disagree.

While the term "cost of production" is not defined by the provisions of KRS 139.480(3), it is defined by 103 KAR 30:140 which provides an inclusive, expansive interpretation as follows:

Section 2. The term "cost of production" as used in KRS 139.480(3) *means the total of all costs, according to accepted accounting principles, incurred in manufacturing, producing, industrial processing, refining, mining, or fabricating of tangible personal property* except for the costs of the energy or energy-producing fuels used therein. The following accounts or similar classifications normally will be reflected in the computation of the cost of production; *direct materials,* direct labor cost, overhead expenses; depreciation, plant equipment; insurance, plant equipment; taxes, plant equipment; rent or depreciation, plant building; compensation insurance; indirect materials; indirect labor; miscellaneous factory expenses; administrative expenses allocated to cost of production; office expenses allocated to cost of production.

(Emphasis added).

■ "[R]egulations adopted by an agency have the force and effect of law." *Hagan v. Farris,* Ky., 807 S.W.2d 488, 490 (1991). "In the construction of administrative regulations, we [the courts] are governed by the same rules which would apply in construing statutes in the same field." *Revenue Cabinet v. Joy Technologies,* Ky.App., 838 S.W.2d 406, 409 (1992). This regulation makes it clear that *all* costs, including raw material costs, must be included when computing the "cost of production." "Total cost" as used in the regulation does not mean some costs; it means *all costs* incurred to produce or to process a product—here, the edible oil. This necessarily includes the costs of acquiring the raw material used in processing—here, the crude vegetable oil.

Despite the provisions of the regulation, LEOP contends that the inclusion of the purchase price of the crude oil in LEOP's "cost of production" is improper because it would, in effect, double the manufacturing costs of the crude oil. The manufacturing costs are reflected first in the selling price of the crude oil, LEOP argues, and again in LEOP's "cost of production." We are not persuaded by this argument.

Because a similar position has been advanced in another jurisdiction, we find reference to the analysis employed by our sister-state to be particularly helpful. In *McKinley Iron v. State Dir. of Revenue,* 888 S.W.2d 705 (Mo. banc 1994), the Supreme Court of Missouri interpreted a similar revenue statute.[1] Ultimately, the court rejected an attempt by a taxpayer to divide its processing into two stages in an effort to exclude its raw material costs from its "cost of production"

---

1. The Missouri statute (RSMo § 144.030.2(12) (Supp.1993)) provided an exemption from sales tax for purchases of:

Electrical energy used in the actual primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, in facilities owned or leased by the taxpayer, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used.

calculation. The taxpayer operated a scrap metal processing plant in which raw scrap metal was converted into densified scrap metal, which was then sold to customers. The taxpayer argued that the cost of the scrap metal it processed should not be included in its "total cost of production" for several reasons. The court considered and dismissed in turn each of the taxpayer's arguments.

The taxpayer argued that the cost of materials had already been borne by the processors that originally produced the scrap metal; for that reason, it should be excludable from the taxpayer's "cost of production." The court responded as follows:

> The simple answer to this argument is that the statute requires the cost of materials to be factored in at least once *for each taxpayer.* It is only if a taxpayer has two discrete stages of production that it includes the cost of materials in the first stage and is not required to include the cost again in the second stage. Therefore, *if a taxpayer is engaged in only one stage of processing, whether primary or secondary, then the cost of materials must be included in that one stage.*

(Emphasis added). *Id.* at 708. (citations omitted). In light of the similarity between our revenue statutes, we find the Missouri Supreme Court's discussion of this issue both enlightening and persuasive. Unlike the taxpayer in *Revenue Cabinet v. James B. Beam,* Ky., 798 S.W.2d 134 (1990), (discussed below), LEOP is involved in only one stage of production or processing. Thus, we conclude that the cost of the crude oil must be included in LEOP's single calculation of its "cost of production."

 In a related argument, LEOP contends that the "plant facilities" language included in KRS 139.480(3) should be construed as words of limitation. LEOP maintains that this language operates specifically to limit the meaning of the term "cost of production." To the contrary, we conclude that the "plant facilities" language contained in the statute requires only that the cost of production be determined from *all plant facilities at one location.* This language does not imply any limitation on the calculation of a taxpayer's production costs.

LEOP argues that this limiting language means that the cost of producing the crude oil is required to be calculated based only on the facilities actually producing the oil rather than the facilities processing it. In rejecting this argument, we have concluded that LEOP's reliance on *Revenue Cabinet v. James B. Beam, supra,* is misplaced.

In *Beam,* the court was presented with a *single* taxpayer whose business consisted of several "separate and discrete" operations, including the distilling, warehousing, and bottling of whiskey. In *Beam,* the taxpayer did not seek to exclude any costs of production from its calculations. Instead, the taxpayer sought to assign its production costs to various phases within one Jim Beam Distilling location in order to maximize its exemption with respect to the distillery operations alone. The court agreed with Beam, interpreting the statute to allow the taxpayer to allocate its production costs among its separate operations.

The interpretation of KRS 139.480(3) now proposed by LEOP, however, is substantially different from that announced in *Beam.* LEOP does not argue that the processing operations undertaken at the Louisville facility are capable of being divided into separate and distinct phases; nor does it argue that its production costs can be shifted or classified according to various phases of its operations. Instead, LEOP urges us to interpret the statute so as to permit a portion of its production costs (the costs of obtaining the crude oil) to be excluded or disregarded altogether. The language of the statute does not allow for such an interpretation.

 Finally, LEOP argues that the interpretation of the statute adopted by the Cabinet, the Tax Board, and the circuit court results in an unconstitutional classification in violation of Sections 2, 3, and 59 of the Kentucky Constitution. LEOP maintains that application of the statute in the manner advanced by the Cabinet causes crude oil processors to pay more sales and use tax on energy than others operating comparable enterprises. We disagree.

Despite LEOP's characterizations, we conclude that LEOP is not similarly situated

with an operator that processes materials owned by others or with a producer that processes its own materials. That being so, there are no grounds upon which to base a charge of indiscriminate classification or to support an equal protection argument.

It is a well-accepted rule of construction that exemptions from taxation are disfavored and that such statutes are to be strictly construed against the taxpayer. *Delta Air Lines v. Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985). Moreover, the cardinal rule of statutory construction is to give effect to discernible legislative intent. *McCracken Co. Fiscal Court v. Graves,* Ky., 885 S.W.2d 307 (1994). To interpret KRS 139.480(3) in the manner proposed by LEOP would serve to vitiate rather than to give effect to the intent of the legislature in enacting the limited tax exemption.

The judgment is affirmed.

All concur.