RENDERED:  JULY 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0301-MR

CENTURY ALUMINUM OF KENTUCKY, GP                    APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 19-CI-00424

DEPARTMENT OF REVENUE,
FINANCE AND ADMINISTRATION CABINET
COMMONWEALTH OF KENTUCKY                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, MAZE, AND TAYLOR, JUDGES.

MAZE, JUDGE:  Appellant, Century Aluminum of Kentucky, GP ("Century"),

appeals the Franklin Circuit Court's order holding certain items are subject to sales

and use tax under KRS[1] 139.470(9).[2]  For the following reasons, we affirm.

---

[1] Kentucky Revised Statutes.

[2] On April 27, 2018, KRS 139.470(10) was amended and renumbered as KRS 139.470(9).  The amendment does not affect the issues in this case.

## BACKGROUND

Century manufactures aluminum in its facility in Hawesville, Kentucky. For its manufacturing process, Century purchased anode stubs, Inductotherm lining, thermocouples and tube assemblies, welding wire, and industrial gases (collectively, the "items") from Kentucky vendors. The vendors charged tax on these items, which was then paid to Appellee, Commonwealth of Kentucky, Finance and Administration Cabinet, Department of Revenue (the "Department").

Initially, Century paid the six percent (6%) sales and use tax to the vendors, who then remitted the tax to the Department. Because Century believed the items were exempt from the sales and use tax, the vendors, on Century's behalf, filed refund requests pursuant to KRS 139.770. The refund requests covered the items purchased from November 2010 to May 2015. The Department denied the refund requests for each item stating the items were "repair, replacement, or spare parts," which are not exempt from sales and use tax under KRS 139.470(9).

The vendors entered into agreements assigning their rights to the refunds to Century. *See* KRS 134.580(2). Then, Century, as assignee, requested final rulings from the Department for the items in question. *See* KRS 131.110(4).

The Department issued seven separate final rulings denying the refund claims. *See* KRS 131.110(3).

Century appealed the seven final rulings with the Kentucky Claims Commission (the "Commission"). *See* KRS 49.220(3). The Commission consolidated the seven appeals and an evidentiary hearing was held in September 2018. The hearing officer recommended that Century's refund requests be paid because the items were exempt supplies under KRS 139.470(9). The Commission subsequently adopted the hearing officer's recommendation and issued a final order on March 27, 2019.

The Department appealed the Commission's final order to the Franklin Circuit Court, pursuant to KRS Chapter 13B and KRS 49.250. On February 3, 2020, the circuit court reversed the Commission's final order, finding the items were not exempt from the sales and use tax under KRS 139.470(9) because the items were "repair, replacement, or spare parts," which are taxable. This appeal, pursuant to KRS 13B.160, followed. Additional facts will be developed as necessary.

STANDARD OF REVIEW

Pursuant to KRS 13B.150(2), a circuit court shall not substitute its judgment for that of the Commission "as to the weight of the evidence on

questions of fact." However, the circuit court may reverse the Commission's final order if it finds the order is:

> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

KRS 13B.150(2).

Here, the parties do not dispute that the findings of facts were supported by substantial evidence in the record. Instead, Century disputes the circuit court's interpretation of the relevant statutes: KRS 139.470(9) and KRS 139.010(34).[3] We review statutory interpretation cases as a matter of law *de novo*.

---

[3] KRS 139.010(34), effective June 27, 2019, was previously numbered KRS 139.010(35) and, before that, KRS 139.010(26). The renumbering of this statute does not affect the issues in this case.

*Louisville Edible Oil Prod., Inc. v. Revenue Cabinet Kentucky*, 957 S.W.2d 272, 274 (Ky. App. 1997) (citations omitted).

ANALYSIS

For its appeal, Century argues that the circuit court erred by not harmonizing KRS 139.470(9)(b)2., which states that certain items are tax-exempt, with KRS 139.010(34), which is the definition statute for KRS Chapter 139. Specifically, Century claims the two statutes conflict by exempting certain items from the sales and use tax while also defining certain items as subject to the sales and use tax.

Because this appeal involves the construction and application of the sales and use tax exemption, we begin our analysis with the observation that "tax exemptions are disfavored and will be narrowly or strictly construed, with all doubts resolved against the exemption's application . . . ." *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 461 (Ky. 2004). Accordingly, we resolve close questions concerning statutory exemptions against awarding an exemption. We now turn to the statutes at issue.

According to KRS 139.470(9), certain items are exempt from taxes, including:

> (a) Gross receipts derived from the sale of tangible personal property, as provided in paragraph (b) of this subsection, to a manufacturer or industrial processor if

the property is to be directly used in the manufacturing or industrial processing process of:

    1.  Tangible personal property at a plant facility;

. . . .

(b) The following tangible personal property shall qualify for exemption under this subsection:

    1.  Materials which enter into and become an ingredient or component part of the manufactured product;

    2.  Other tangible personal property which is directly used in the manufacturing or industrial processing process, if the property has a useful life of less than one (1) year. Specifically these items are categorized as follows:

        a.  Materials.  This refers to the raw materials which become an ingredient or component part of supplies or industrial tools exempt under subdivisions b. and c. below;

        b.  Supplies.  This category includes supplies such as lubricating and compounding oils, grease, machine waste, abrasives, chemicals, solvents, fluxes, anodes, filtering materials, fire brick, catalysts, dyes, refrigerants, and explosives. The supplies indicated above need not come in direct contact with a manufactured product to be exempt. **"Supplies" does not include repair, replacement, or spare parts of any kind**; and

        c.  Industrial tools.  This group is limited to hand tools such as jigs, dies, drills, cutters,

rolls, reamers, chucks, saws, and spray guns and to tools attached to a machine such as molds, grinding balls, grinding wheels, dies, bits, and cutting blades. Normally, for industrial tools to be considered directly used in the manufacturing or industrial processing process, they shall come into direct contact with the product being manufactured or processed; and

3. Materials and supplies that are not reusable in the same manufacturing or industrial processing process at the completion of a single manufacturing or processing cycle. A single manufacturing cycle shall be considered to be the period elapsing from the time the raw materials enter into the manufacturing process until the finished product emerges at the end of the manufacturing process.

(c) The property described in paragraph (b) of this subsection shall be regarded as having been purchased for resale.

(d) For purposes of this subsection, a manufacturer or industrial processor includes an individual or business entity that performs only part of the manufacturing or industrial processing activity, and the person or business entity need not take title to tangible personal property that is incorporated into, or becomes the product of, the activity.

(e) **The exemption provided in this subsection does not include repair, replacement, or spare parts[.]**

(Emphasis added). The phrase "repair, replacement, or spare parts," as used in the statute, is defined in KRS 139.010(34)(a)-(b) as "any tangible personal property

used to maintain, restore, mend, or repair machinery or equipment" and "does not include machine oils, grease, or industrial tools[.]"

Century contends that these two statutes conflict because almost all items that qualify for a tax-exemption under KRS 139.470(9)(b)2.b. are also used to "maintain, restore, mend, or repair machinery or equipment" and, thus, not exempt under KRS 139.010(34)(a)-(b). If these two statutes are not harmonized, Century claims that KRS 139.470(9) is meaningless and null.

In response, the Department argues that harmonization of KRS 139.470(9)(b)2.b. with KRS 139.010(34) is unnecessary because the two statutes do not conflict. The Department notes that KRS 139.470(9) provides examples of exempt items and KRS 139.010(34) merely defines "repair, replacement, or spare parts" as used in KRS 139.470(9).

At the September 2018 hearing of this matter, three witnesses testified regarding the items at issue. William Morgan, a technical manager for Century with thirty years of experience in the aluminum industry, testified that each item had a useful life of less than one year, was used directly in manufacturing, at a manufacturing facility, and was tangible personal property. These are criteria outlined in KRS 139.470(9). Mr. Morgan also testified that, at the end of each item's useful life, the items had no value or were scrap. Additionally, Century had Robert C. Clark, a certified public accountant and retiree from the Department,

testify regarding the statutes at issue. Mr. Clark testified that the items were tax-exempt and the two governing statutes conflict. Finally, Richard Dobson, an executive director with the Department, testified that the sales and use tax exemption was not applicable to the items. Thus, Mr. Dobson testified that the Department correctly denied Century's refund request.

After the hearing, the Commission concluded that the items at issue were not "repair, replacement, or spare parts" and, thus, were tax-exempt. The Commission, relying on *Mansbach Metal Co. v. Department of Revenue*, 521 S.W.2d 85, 87 (Ky. 1975), held that a distinction must be drawn between items that are used up and items that simply wear out to determine if the items are tax-exempt. Based on Mr. Dobson's testimony that the Department does not consider this distinction, the Commission held that the Department erroneously interpreted KRS 139.470(9) and KRS 139.010(34) because "[a]lmost all exempt supplies" also fit the definition of non-exempt supplies. To harmonize these statutes, the Commission adopted Century's proposed four-part test[4] to conclude that the items

---

[4] Century's four-part proposed test is: (1) Determine the useful life of the tangible personal property at issue if the machine or equipment that the tangible personal property allegedly maintains, restores, mends, or repairs is operating **without** the introduction of the product being manufactured. (2) Determine the useful life of the tangible personal property at issue if the machine or equipment that the tangible personal property allegedly maintains, restores, mends, or repairs is operating **with** the introduction of the product being manufactured. (3) If there **is a difference** in the useful lives of the tangible personal property between (1) and (2), then the tangible personal property is being consumed in the manufacturing process and is exempt from tax. (4) If there is **no difference** in the useful life of the tangible personal property between (1) and (2), then the tangible personal property is a taxable repair, replacement, or spare part.

at issue were designed to be used up in the manufacturing process and, thus, were tax-exempt.

On appeal, the circuit court reversed the Commission's final order and held that the two relevant statutes do not conflict. The circuit court held that KRS 139.470(9) provides examples of tax-exempt items, but also makes clear that if the items are purchased as "repair, replacement, or spare parts," then they are not tax-exempt. The circuit court then found that each item was used as "repair, replacement, or spare parts" and, thus, were taxable as discussed below.

First, the circuit court addressed the anode stubs used in Century's manufacturing process. The anode stubs are part of the larger anode assembly consisting of the anode rod and a "yolk," to which the anode stubs are welded using the welding wire and industrial gases. Century's witness, Mr. Morgan, testified that the anode stubs are used to "maintain" the anode assembly and that replacing the anode assembly is necessary to maintain the entire manufacturing process. Because "repair, replacement, or spare parts" is defined as "any tangible personal property used to maintain, restore, mend, or repair machinery or equipment," the circuit court concluded that anode stubs were not tax-exempt under the statutes.

Second, the circuit court addressed the welding wire and industrial gases, which Mr. Morgan testified were necessary to join the anode stub to the

yoke. Based on Mr. Morgan's testimony that the welding wire and industrial gas must be used to "restore" the anode assembly, the circuit court held that these items met the definition of "repair, replacement, or spare parts" and, thus, were not tax-exempt.

Third, the circuit court addressed the thermocouples and tube assemblies, which Mr. Morgan testified act as a thermometer and need regular replacing due to metal fatigue from the high temperature baths in the manufacturing process. Because Mr. Morgan testified that the thermocouples and tube assemblies were purchased to "replace" existing ones, the circuit court held that they qualify as replacement parts and were not tax-exempt.

Finally, the circuit court addressed the Inductotherm lining, which Mr. Morgan testified separates the molten cast iron from the furnace components in the manufacturing process. Because Mr. Morgan testified that the Inductotherm lining was used to "maintain" the induction furnaces, the circuit court held that this item was not tax-exempt.

Because each of the foregoing items were "repair, replacement, or spare parts," as defined in KRS 139.010(34), the circuit court concluded that Century was not entitled to a refund. Furthermore, the circuit court rejected Century's proposed four-part test because it "ignore[d] the fact that all tangible personal property used in the manufacturing process wears down or is used up"

and this test would only serve to exempt nearly all items from the sales and use tax in KRS 139.470(9). Instead, the circuit court held that the proper test is whether items of tangible personal property are introduced into the manufacturing process "to maintain, restore, mend, or repair machinery or equipment" as set forth in KRS 139.010(34) *or* whether items of tangible personal property are used up or consumed because of their involvement in the manufacturing process. If an item is used "to maintain, restore, mend, or repair machinery or equipment," then it is subject to the sales and use tax. However, if the item is used up or consumed because of its involvement in the manufacturing process, then it is not subject to the sales and use tax.

After careful review, we conclude that the two statutes at issue are not in conflict. While KRS 139.470(9) outlines items that are exempt from the sales and use tax, this statute also clearly excludes items purchased as "repair, replacement, or spare parts" from the exemption. That exclusion is contained *within* KRS 139.470(9). Then, the Legislature defined that exclusion in KRS 139.010(34), which is the definition statute for KRS Chapter 139. Therefore, the two statutes do not need to be harmonized and we hold that the circuit court correctly interpreted the statutes at issue.

Also, we agree with the circuit court's rejection of Century's proposed four-part test. In KRS 139.470(9), the Kentucky Legislature set forth the

-12-

parameters for how to classify an item as tax-exempt or taxable. Clearly, the Legislature intended for certain items in the manufacturing process to be tax-exempt and for other items to be taxable. In light of the express language of the statute, the circuit court properly interpreted the statutes and applied the Legislature's words as written to evaluate the items at issue. We also agree with the circuit court's application of the law to the facts to conclude that the items were introduced "to maintain, restore, mend, or repair machinery or equipment" and, therefore, are taxable.

At this point, we recognize Century's argument that the Department improperly attached evidence to its appellate brief. Century urges the Court to disregard the Department's references to the Legislature's intent regarding KRS 139.470(9) because those materials were not part of the record below and can only be introduced when a statute is considered ambiguous.

As a general matter, Century is correct that evidence not offered or introduced as evidence in the lower court, with exceptions, will not be considered by an appellate court. However, we also note that we are bound by KRS 446.080(1), which directs that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" Accordingly, "the cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *MPM Fin.*

*Grp., Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009) (citation omitted). "We also bear in mind that where the language of a statute is clear and unambiguous on its face, we are not free to construe it otherwise even though such construction might be more in keeping with the statute's apparent purpose." *Id.* (citation omitted).

In this case, the language of KRS 139.470(9) and KRS 139.010(34) is clear and unambiguous. The Court did not need to examine the legislative history referenced by the Department to interpret the language of the statutes or ascertain the Legislature's intent. *See Cummings v. Covey*, 229 S.W.3d 59, 61 (Ky. App. 2007).

## CONCLUSION

In conclusion, the circuit court properly interpreted the statutes and applied the law to the facts to conclude that the items were taxable as "repair, replacement, or spare parts" under KRS 139.470(9) and KRS 139.010(34). For the foregoing reasons, we affirm the circuit court's order.


JONES, JUDGE, CONCURS.

TAYLOR, JUDGE, DISSENTS AND DOES NOT FILE A SEPARATE OPINION.

-14-

BRIEFS FOR APPELLANT:

Steven L. Lenarz
Goshen, Kentucky

BRIEF FOR APPELLEE:

Richard W. Bertelson, III
Frankfort, Kentucky