RENDERED:  JUNE 20, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0916-MR

JACK HURST                                                          APPELLANT


APPEAL FROM NELSON CIRCUIT COURT
v.        HONORABLE JOSEPH GUINAN BALLARD, JUDGE
ACTION NO. 23-CI-00211


NELSON COUNTY PVA                                               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

JONES, A., JUDGE:  This appeal concerns a tax assessment increase on residential

property located in Nelson County, Kentucky.  Appellant, Jack Hurst, contends

that the 76.5% tax assessment increase imposed on this property by the Nelson

County Public Valuation Administrator ("PVA") was arbitrary and should be set

aside.  Before coming to our Court, Hurst appealed the assessment to the Nelson

County Board of Assessment Appeals ("BAA"), the Kentucky Board of Tax Appeals ("KBTA"), and the Nelson Circuit Court. All upheld the assessment.

We affirm the Nelson Circuit Court's decision not to alter the KBTA's disposition, and we do so for two reasons: (1) the Nelson Circuit Court lacked particular case jurisdiction to resolve Hurst's judicial appeal; and (2) even if the Nelson Circuit Court obtained particular case jurisdiction, we agree with its conclusion that Hurst did not meet his burden of demonstrating the assessment was arbitrary.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At all relevant times, and for purposes of his business, Hurst owned real property located in Nelson County at 815 Allison Avenue, Bardstown, Kentucky 40033. The residence located on the property was constructed in 1948, it is one and a half stories, and it has 1,261 square feet of living space and 720 square feet of unfinished basement. The property was previously assessed at $58,800. As of January 1, 2022, the PVA increased the assessment to $103,800. After being notified of the increase, Hurst proceeded by filing an appeal with the BAA pursuant to KRS[1] 133.120(2)(a). As indicated, the BAA upheld the PVA's assessed value. Hurst then appealed to the KBTA pursuant to KRS 49.220. The KBTA assigned the matter to a hearing officer; the parties exchanged discovery; an

---

[1] Kentucky Revised Statute.

evidentiary hearing was held on December 20, 2022; on March 29, 2023, the hearing officer entered a recommended order also upholding the PVA's assessed value; and, on April 28, 2023, the KBTA entered a final order adopting the hearing officer's recommendation. On May 26, 2023, Hurst then appealed by filing an original action with the Nelson Circuit Court. The circuit court, by and through an April 24, 2024 order, likewise upheld the PVA's assessed value. This appeal followed. Additional facts will be discussed in our analysis below.

## II. ANALYSIS

**A. The circuit court lacked particular case jurisdiction**.

The complaint Hurst filed with the circuit court on May 26, 2023, did not list his address or include a copy of the KBTA's final order – two points the PVA raised in a June 9, 2023, CR[2] 12.02 motion to dismiss his action for failure to state a claim.[3] The PVA argued Hurst's complaint consequently violated KRS 49.250(1), and that the circuit court was therefore deprived of "subject matter jurisdiction."[4] The circuit court denied the PVA's motion and instead resolved

---

[2] Kentucky Rule of Civil Procedure.

[3] To be sure, Hurst's complaint did not list any addresses; it was not accompanied by any administrative orders; it did not mention the KBTA's final order of April 28, 2023; and the relief Hurst specifically requested was for the circuit court to "remand and vacate the Proposed Order of March 29, 2023," not the KBTA's final order. *See* Record at 3.

[4] A party's failure to strictly comply with statutory preconditions for invoking judicial review of an administrative decision implicates *particular case* jurisdiction, not *subject matter jurisdiction*, but the PVA's confusion regarding that issue is understandable. Our Supreme Court recently

Hurst's action on the merits. However, an appellate court may affirm a lower court's decision on other grounds – even grounds rejected by the lower court – so long as the lower court reached the correct result. *See Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 576 (Ky. 2009); *Brown v. Barkley*, 628 S.W.2d 616, 619 (Ky. 1982). We do so here.

A circuit court should not dismiss a petition for failure to state a claim unless it appears from the pleading the petitioner would not be entitled to relief under any state of facts which could be proved in support of his claim. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citations omitted). That said, Hurst's pleading demonstrated he was not entitled to any relief before the circuit court. Hurst filed an original action with the circuit court appealing an administrative decision of the KBTA. But, the circuit court's particular case jurisdiction over original actions contesting administrative decisions is only properly invoked if the plaintiff strictly complies with the statutes authorizing such actions:

> There is no appeal to the courts from an action of an administrative agency as a matter of right. When

acknowledged it "has spoken contrarily as to whether that is specifically an issue of subject matter or particular-case jurisdiction." *Louisville Historical League, Inc. v. Louisville/Jefferson County Metro Gov't*, 709 S.W.3d 213, 223 (Ky. 2025).

Parenthetically, an essential difference between "subject matter" and "particular case" jurisdiction is that the former cannot be waived, whereas the latter can be waived if "failures to comply with the statutory requirements to invoke the jurisdiction of the reviewing court" are not "raised in that reviewing court." *Id*. at 227. This difference is not germane to our analysis because, by and through its CR 12.02 motion, the PVA effectively raised Hurst's noncompliance before the reviewing court, *i.e.*, the circuit court.

> grace to appeal is granted by statute, a strict compliance
> with its terms is required. Where the conditions for the
> exercise of power by a court are not met, the judicial
> power is not lawfully invoked. That is to say, that the
> court lacks jurisdiction or has no right to decide the
> controversy.

*Bd. of Adjustments of City of Richmond v. Flood*, 581 S.W.2d 1, 2 (Ky. 1978)

(citations omitted)

Thus, where the statute authorizing judicial review of an administrative action requires the plaintiff's petition to satisfy certain conditions, those conditions must be met; otherwise, the plaintiff's action is subject to dismissal under CR 12.02. *See, e.g.*, *Taylor v. Kentucky Unemployment Ins. Comm'n.*, 382 S.W.3d 826 (Ky. 2012) (affirming dismissal of administrative appellate action where, contrary to the statute authorizing the action, the plaintiff's petition for review was not verified); *Kenton Cnty. Bd. of Adjustment v. Meitzen*, 607 S.W.3d 586 (Ky. 2020) (reinstating circuit court's dismissal of appellate action where, contrary to the statute authorizing the action, the plaintiff's petition for review did not provide any factual allegations to support a claim they were injured or aggrieved in some way by the agency's action).

Here, as the PVA correctly noted in its motion to dismiss, appeals from final orders of the KBTA are governed by KRS 49.250, which provides in relevant part:

(1) Any party aggrieved by any final order of the Board of Tax Appeals, except on appeals from a county board of assessment appeals, may appeal to the Franklin Circuit Court or to the Circuit Court of the county in which the party aggrieved resides or conducts his place of business in accordance with *KRS Chapter 13B*. Any final orders entered on the rulings of a county board of assessment appeals *may be appealed in like manner* to the Circuit Court of the county in which the appeal originated.

(Emphasis added.)

In turn, KRS 13B.140(1) delineates the procedures to be followed when seeking judicial review of an administrative agency's final order and the requisite contents of a petition for review:

Except as provided in KRS 452.005, all final orders of an agency shall be subject to judicial review in accordance with the provisions of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) days after the final order of the agency is mailed or delivered by personal service. If venue for appeal is not stated in the enabling statutes, a party may appeal to Franklin Circuit Court or the Circuit Court of the county in which the appealing party resides or operates a place of business. Copies of the petition shall be served by the petitioner upon the agency and all parties of record. The petition shall include the names and addresses of all parties to the proceeding and the agency involved, and a statement of the grounds on which the review is requested. The petition shall be accompanied by a copy of the final order.

Thus, KRS 13B.140(1) plainly required Hurst's petition before the circuit court to: (1) be served by the petitioner upon the agency and all parties of

record; (2) include the names of all parties to the proceeding and the agency involved; (3) include the addresses of all the parties to the proceeding and the agency involved; (4) include a statement of the grounds on which the review is requested; and (5) be accompanied by a copy of the final order. These were distinct statutory preconditions to the circuit court's exercise of particular case jurisdiction. *See, e.g.*, *LWD Equip., Inc. v. Revenue Cabinet*, 136 S.W.3d 472, 477 (Ky. 2004) ("[W]e find that the circuit court had jurisdiction to hear the appeal. The corporation's petition of appeal to the circuit court named the Board of Tax Appeals twice and included the Board's address to strictly comply with KRS 13B.140(1). The corporation served the Board with a copy of its petition for review."); *Anderson Cnty. Health Dep't v. Cabinet for Health and Family Servs.*, No. 2018-CA-000615-MR, 2019 WL 3246491, at *4 (Ky. App. Jul. 19, 2019) (unpublished)[5] (affirming dismissal because plaintiff's petition for review failed to include parties' addresses in its petition and a copy of the final order along with the petition, both of which were "mandatory requirements set forth in KRS 13B.140(1).")

Hurst's failure to include his address in his petition for review and a copy of the KBTA's final order with his petition accordingly deprived the circuit

---

[5] "[U]npublished opinions are not binding precedent, but only persuasive authority." *Johnson v. Commonwealth*, 659 S.W.3d 832, 837 (Ky. App. 2021) (citation omitted).

court of particular case jurisdiction to resolve the merits of his action. To be sure, Hurst responded to the PVA's CR 12.02 motion by filing a "notice of filings" into the record on June 16, 2023, which included: (1) his address; (2) a copy of the KBTA hearing officer's March 29, 2023 recommended order; and (3) a copy of the KBTA's April 28, 2023 final order adopting the hearing officer's recommendation. However, if Hurst was attempting to amend his complaint to comply with KRS 13B.140(1), his effort was in vain. While our rules of civil procedure allow parties to amend their pleadings (*see* CR 15.01),

> [T]he Civil Rules do not apply until *after* an appeal has been perfected, *Flood*, 581 S.W.2d at 2, rendering CR 15.01 inapplicable here. Indeed, resolution of the motion to amend returns us to the same principle: the failure to follow the statutory guidelines for such an appeal is fatal. A person seeking review of administrative decisions must strictly follow the applicable procedures.

*Meitzen*, 607 S.W.3d at 598 (internal quotation marks omitted).

Hurst failed to follow the appeal procedures in KRS 13B.140(1) by failing to include his address in his petition and a copy of the KBTA's final order with it. Without a properly perfected appeal, CR 15.01 did not apply, and the circuit court should have granted the PVA's motion to dismiss Hurst's complaint. *Id*. Thus, we affirm on this alternate ground.

**B. Hurst did not meet his burden of demonstrating the PVA's assessment was arbitrary**.

Even if the Nelson Circuit Court had particular case jurisdiction (and it did not), we agree with its conclusion that Hurst did not meet his burden of demonstrating the assessment was arbitrary. To adequately explain this point, a more detailed discussion of the facts is necessary, framed in the context of the two arguments Hurst poses on appeal: (1) the circuit court "erred when it determined that Hurst was responsible for his own due process even if public officials were derelict;"[6] and (2) "The State Board abused its discretion when it found a result against substantial evidence of renovations that even the PVA found compelling against her assessment." We will address these arguments in turn.

**1. Nothing of record demonstrates "public officials" denied Hurst due process**.

On the final page of his brief, Hurst provides the most apt summary of his argument that he suffered a loss of "due process" at the hands of "public officials" who were "derelict":

> [T]he state board issued an order that lacks substantial evidence on the record as particularly evidenced by the spontaneous comments by the PVA that she would have changed the assessment based on Hurst's information about the condition of the property. If the PVA, as the public official who is statutorily required to educate the taxpayer on the appeal process, had simply *asked* to see Hurst's information sooner rather than barely brushing

_____

[6] Br. at 9.

-9-

> through a skeletal version of conference and local board meeting, perhaps due process would have been afforded and the correct result reached.

Br. at 12.

This argument carries at least two flaws. First, as will be discussed below, the PVA who testified at the KBTA hearing – Tracy Bonzo, who was the elected Nelson County Property Valuation Administrator at all relevant times – *never* testified that she "would have changed the assessment based on Hurst's information about the condition of the property." Second, while a preliminary step in the administrative process does require a PVA to exchange additional information with the taxpayer and to educate the taxpayer about part of the administrative appellate process, Hurst insisted upon *skipping* that step. And, since at least the circuit court level of review, Hurst has been improperly attempting to use his skipping of that step as a sword in this litigation.

As somewhat indicated, Hurst's argument revolves around a "conference" required by KRS 133.120. Specifically, KRS 133.120(1)(a) provides:

> Any taxpayer desiring to appeal an assessment on real property made by the property valuation administrator shall first request a conference with the property valuation administrator or his or her designated deputy. The conference shall be held prior to or during the inspection period provided for in KRS 133.045, or during an extension granted under subsection (2)(d) of this section.

-10-

This "conference" serves a few important functions. Obviously, the administrative appellate process does not properly *begin* until the taxpayer requests the conference. *Id.* The taxpayer cannot properly *continue* the administrative appellate process (*i.e.*, by proceeding to the local board of assessment appeals) until after the conference has occurred. *See* KRS 133.120(2)(a). The conference also serves a critical role in developing the administrative record and expediting the proceedings. It provides: (1) an opportunity for the taxpayer, with the assistance of a licensed appraiser or other qualified professional, to present the PVA with an alternative valuation and evidence supporting it;[7] (2) an opportunity for the PVA to "provide an explanation to the taxpayer of the constitutional and statutory provisions governing property tax administration, including the appeal process, as well as an explanation of the procedures followed in deriving the assessed value for the taxpayer's property[;]"[8] (3) an opportunity for both sides to accordingly negotiate a settlement;[9] and (4) the first forum for creating the administrative record – a record that "shall include but not be limited to the initial assessed value, the value claimed by the taxpayer, an explanation of any changes

---

[7] *See* KRS 133.120(1)(b) & (d).

[8] KRS 133.120(1)(c).

[9] *See* KRS 133.120(1)(d).

-11-

offered or agreed to by each party, and a brief account of the outcome of the conference."[10]

To be clear, Hurst was *not* given "a skeletal version of [the] conference" as he claims; nor is the fact that he progressed to the BAA and later to the KBTA evidence that he carried out that separate and distinct step in the administrative process. The evidence supports only that Hurst insisted upon skipping that step. Specifically, Bonzo testified at the KTBA hearing that after being notified of the increase in valuation of his property, Hurst visited the PVA's office on or about May 24, 2022, and simply left a handwritten note indicating that he was waiving his right to a "local appeal" and that he intended to instead proceed directly to an appeal before the KBTA. Bonzo, who received Hurst's note shortly after he left the office, telephoned him about it later that day. Regarding the substance of their conversation, Bonzo testified (consistently with what she identified were her contemporaneous notes of their telephone conversation)[11] she

---

[10] *Id.*

[11] Bonzo wrote her notes regarding her May 24, 2022 telephone conversation on a printout of the PVA's "property card" relating to 815 Allison Avenue. Her notes were as follows: "Property Owner waives his right to appeal to the local board and wants to appeal directly to the state board of appeals. 5/24/22 – called taxpayer to advise that he cannot go directly to state appeal without going before the local board. He says he will come in to complete appeals forms but will not discuss assessment with me. *Property owner did not want to discuss the assessment with me. He wants to appeal to the state. No information was provided or discussed about the property or its value."

told Hurst that before he could appeal to the KBTA, he first needed to appeal before the Nelson County Board of Assessment Appeals. Bonzo added she also offered to discuss the valuation with him and any additional information he might wish to present about it, but that Hurst refused and told her "There's no point in whittling, us trying to whittle each other down. I want to go straight to state."[12]

Hurst has never disputed Bonzo's recollection of those events. Further, Bonzo did *not* testify at the KBTA hearing, as Hurst now represents in his brief, that if a conference had occurred, she "would have changed the assessment based on Hurst's information about the condition of the property." To the contrary, during the segment of the hearing referenced by Hurst in his brief, she testified:

> I don't know if I could've gotten it where [Hurst] wanted it, but I could've definitely worked with him some way. I mean, if he would've told me all this about the construction, or if there had been a permit which I don't understand why there was no permits, you know, maybe I could have done something. But I'll never know.

December 20, 2022 hearing at 14:15:55-14:16:13.

To the extent Hurst is assigning fault for the nonoccurrence of the conference, and for the dearth of any evidence that otherwise could have been gleaned from and memorialized in a record of that conference, he has only himself

---

[12] *See* December 20, 2022 hearing at 14:15:37- 14:15:40.

to blame:  KRS 133.120(1)(a) placed the burden of requesting that conference squarely upon *him*.  Furthermore, it is unclear how the lack of a conference prejudiced Hurst:  nothing precluded him from adducing all the evidence he wished to adduce, or from contesting any of the PVA's evidence, when he was before the BAA.[13,14]

        To the extent Hurst believes his administrative proceedings should not have proceeded without that conference, we agree, but that kind of error does not

---

[13] KRS 133.120(3)(c) provides:  "The taxpayer shall provide factual evidence to support his or her appeal [before the BAA].  If the taxpayer fails to provide reasonable information pertaining to the value of the property requested by the property valuation administrator, the department, or any member of the board, his or her appeal shall be denied."  This is the first instance where KRS 133.120 places an affirmative duty upon the taxpayer to provide evidence during the administrative appellate process; and it indicates that the taxpayer's obligation to produce evidence begins at the board of assessment appeals stage of the appeal process, not before.  Indeed, when analyzing the same language set forth in a substantially similar prior version of this statute, this Court arrived at that same conclusion.  *See Dunaway v. DLX, Inc.*, 113 S.W.3d 632, 636 (Ky. App. 2002).

[14] In a somewhat related vein, Hurst also represents that during the KBTA hearing, he explained that he had attempted to raise house habitability and renovation issues regarding his property before the BAA, "but that the local review was so cursory that he was unable to get any substance covered meaningfully at those stages."  Br. at 6.  First, Hurst stops short of arguing he was unable to present his evidence to the BAA.  Second, Hurst misrepresents the record.  The portion of the hearing Hurst cites in support of that purported statement merely features him testifying:

> With Miss, Miss, uh, Tracy [Bonzo] over there, we discussed this at length about how this house, they tried to reassess it.  I told them, if this was another county we wouldn't be here, that I'm in the process of fixing it up enough to sell it.  For what little value they get out of it for this assessment, the sale would more than make up for it, if in fact I get it sold.  We had several conversations [unintelligible].  As far as waiving, I just waived the local thing, the local hearing, uh, hearing, because they don't do anything, they just rubber stamp, there was nothing offered, there was nothing countered, there was nothing of anything.

December 20, 2022 Hearing at 13:40:12-13:40:50.

help him. Without having the conference, Hurst was not properly entitled to proceed to the BAA; and without requesting the conference, Hurst was not properly entitled to *any review at all*. Hurst has not called attention to any kind of reversable error; rather, he has merely pointed out a "failure to exhaust administrative remedies" defense that the PVA could have asserted against him, never raised, and consequently forfeited. *See Hopkins v. Smith*, 592 S.W.3d 319, 321 n.2 (Ky. App. 2019) (citation omitted) ("[F]ailure to exhaust administrative remedies is an affirmative defense that may be waived.").

**2. Substantial evidence supported the KBTA's decision. Hurst's evidence of "renovations" did not compel a contrary result**.

Addressing this final aspect of Hurst's appeal requires additional discussion of: (a) this case's factual and procedural history; and (b) our standard of review. We will discuss both of those points before proceeding to (c) our analysis.

a. Supplementary factual and procedural history

As stated, the KBTA hearing officer conducted the evidentiary hearing regarding Hurst's appeal on December 20, 2022. The witnesses were Bonzo, Hurst, and Joe Wethington (an employee of Hurst's real estate business). Bonzo is a Certified Kentucky Assessor. Her relevant qualifications are not in dispute. She explained the methodology used by the PVA to calculate property values in Nelson County. Specifically, the PVA relies upon the "sales comparison

-15-

approach" when conducting mass assessments and did so in this instance. It keeps data of the prices of the properties in the area when they are sold, and assesses a given property based upon recent sales prices of nearby properties that have similar characteristics, such as square footage, number of stories, age, and design. When property values are contested, the PVA ascertains whether the property should have a different value by reviewing the information presented by the taxpayer, reviewing whether any construction permits have been requested regarding the property, and by observing conditions on the exterior of the home.

In preparing the assessment of Hurst's 815 Allison Avenue property, the PVA relied upon five comparables from Hurst's neighborhood: (1) 116 West Forrest Avenue, which sold for $160,000 on March 1, 2021; (2) 715 Moore Avenue, which sold for $154,900 on April 1, 2020; (3) 720 Moore Avenue, which sold for $98,300 on January 1, 2020; (4) 622 Moore Avenue, which sold for $125,000 in 2018; and (5) 19 Bluegrass Court, which sold for $129,000 in 2018. These five properties were selected as comparables because, like Hurst's property, they were 1 ½ stories; they had similar square footage; they were of similar age; they were similar in design; and three of them also had unfinished basements.[15]

---

[15] 116 West Forrest Avenue had 1,377 square feet of living space and was built in 1945. 715 Moore Avenue had 1,268 square feet of living space, 832 square feet of unfinished basement, and was built in 1951. 720 Moore Avenue had 1,050 square feet of living space, 720 square feet of unfinished basement, and was built in 1948. 622 Moore Avenue had 1,270 square feet of living space, 1,120 square feet of unfinished basement, and was built in 1947. 19 Bluegrass

Bonzo testified that because not every property is the same, adjustments were made in the value based on those differences. The PVA reviewed the average price per square foot of these neighboring properties to reach a valuation of $55 per square foot of living space, $20 per square foot for unfinished space, and $20,000 for the lot. Bonzo testified the valuation of Hurst's property was based upon what was known about the subject property at the time the assessment was made, which did not include any photographs of renovations, knowledge of permits filed,[16] or any other evidence the property was uninhabited.

Hurst, for his part, argued the assessed value of 815 Allison Avenue should have remained at $58,800, or should have been something less. Hurst did not utilize any of the approaches for ascertaining fair value set forth in KRS 132.191 to justify that valuation. He presented no calculations supporting that valuation. Instead, he attempted to impeach the PVA's $103,800 assessed value, and on two grounds. First, Hurst questioned Bonzo about three other properties which he believed could have qualified as comparables and detracted from her assessment: (1) 817 Allison Avenue; (2) 819 Allison Avenue; and (3) 821 Allison Avenue. But, regarding 817 Allison Avenue, Bonzo noted that its 2019 sales price

Court had 1,170 square feet of living space, 840 square feet of ¾ finished basement, and was built in 1946.

[16] Hurst indicated his remodeling work on 815 Allison Avenue never required him to secure any permits.

of $50,000 had resulted from a master commissioner's sale; and she testified her office did not utilize sales prices resulting from foreclosures or distressed sales to serve as comparables because they were typically not fair reflections of average property values.[17]  Regarding 819 Allison Avenue, Bonzo noted Hurst's evidence consisted of a property card that listed a *2017* valuation of $68,380; and Hurst acknowledged his evidence did not indicate the assessed value of that property in 2020 or 2021.[18]  Regarding 821 Allison Avenue, the property card indicated it was 1 ½ stories; had approximately the same square footage; was of the same approximate age; and that it had sold on May 1, 2021, for $75,000.  But, Bonzo testified she did not believe the 821 Allison Avenue property was comparable.

As for his second ground, Hurst faulted Bonzo because she admitted she and her office had no knowledge, prior to assessing 815 Allison Avenue property in January 2022, regarding the condition of the interior of the residence and whether it was inhabited.  Continuing in that vein, Hurst and his employee, Wethington, testified that between 2019 and 2022, no one had been residing at 815 Allison Avenue; that they had "gutted" the interior in 2021; and that in the summer of 2022 – months after the assessment – they had extensively remodeled the kitchen, bathrooms, flooring, and replaced the water heater and air conditioning

---

[17] *See* December 20, 2022 hearing at 13:19-13:21.

[18] *See id.* at 13:21.

-18-

unit. Hurst believed that because the interior of the residence was unlivable when it was assessed in January 2022, it should not have been assessed at the same rate as nearby properties that were inhabited.

After reviewing the evidence, the hearing officer determined Hurst's evidence was not relevant, that Hurst had failed to overcome the legal presumption in favor of the PVA's valuation, and that substantial evidence otherwise supported the PVA's valuation; and she recommended upholding the final determination of the BAA of $103,800 for the 2022 tax year for the 815 Allison Avenue property. Hurst filed general exceptions to the hearing officer's recommendation, one of which was that, in his view, all his evidence was relevant.[19] In a final order rendered April 28, 2023, the KBTA adopted the hearing officer's recommendation

[19] On appeal, Hurst continues to assert that *all* the evidence he adduced before the KBTA was "relevant" and should not have been excluded. Br. at 6. But, the only citation he provides regarding *any* specific evidence he presented to the KBTA, which the KBTA excluded as irrelevant, is a passing reference to the information he presented regarding 817, 819 and 821 Allison Avenue (Br. at 4, citing Record at 96-106). He provides no argument with respect to the over 200 other exhibits he attempted to have admitted as evidence before the KBTA – exhibits that were not admitted, but were filed in and made part of the administrative record. Instead, Hurst satisfies himself by broadly stating, "If the hearing officer had engaged in active weighing of the evidence, there may be more detail to discuss here." Br. at 8.

If Hurst believes he has raised a point of error in this respect, he is incorrect. As the appellant, it is his obligation to demonstrate he was substantially prejudiced by an error stemming from the exclusion of evidence. CR 61.01. It is not the responsibility of this Court to construct legal arguments on behalf of an appellant and scour the record to find where it might provide support for their claims, and we will not do so. *Harris v. Commonwealth*, 384 S.W.3d 117, 131 (Ky. 2012).

and upheld the final decision of the BAA.  Hurst sought appellate relief from the Nelson Circuit Court, which affirmed.  This appeal followed.

## b. Standard of review

One aggrieved by a tax assessment may appeal to the KBTA.  *See* KRS 49.220.  The KBTA's "function is not simply to review the action but to try anew the issues as presented."  *Jefferson Cnty. Prop. Val. Adm'r v. Oxford Prop., Inc.*, 726 S.W.2d 317, 319 (Ky. App. 1987); *see also* KRS 49.220(1) ("Administrative hearings before the board shall be de novo[.]").  Judicial review of the KBTA's decision is governed by KRS Chapter 13B.  *Louisville Edible Oil Products, Inc. v. Revenue Cabinet Commonwealth of Kentucky*, 957 S.W.2d 272, 273 (Ky. App. 1997).  The standard of review appears in KRS 13B.150(2) as follows:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.  The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
>
> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;

(d) Arbitrary, capricious, or characterized by abuse of discretion;

(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

*Id.*

KRS 13B.150(2) makes clear that in reviewing the decision of an administrative agency, a reviewing court does not perform a *de novo* review. With respect to factual disputes, the reviewing court must uphold the agency's decision if there was substantial evidence of probative value upon which the agency could base its decision and the agency applied the correct rule of law to the facts before it. *Kentucky Unemployment Ins. Comm'n v. Murphy*, 539 S.W.2d 293, 294 (Ky. 1976). If the agency relied on substantial evidence in making its determination, the reviewing court must uphold it. *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299, 302 (Ky. 1963). "'[S]ubstantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

c. <u>Analysis</u>

Section 172 of the Kentucky Constitution states that "all property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. . . ." "The determination of fair market value is a difficult task, and, except in rare circumstances, the final decision is at best an educated estimate. Comparable sales and the sale of the identical property are at best factors which enable the determining body to make an enlightened estimate." *Harlan County Bd. of Sup'rs v. Black Star Land Co.*, 392 S.W.2d 40, 42 (Ky. 1965). "Regardless of the manner or method used by the Property Valuation Administrator or the decision of the Kentucky Board of Tax Appeals, the finding of valuation must be its fair cash value, estimated at the price it would bring at a fair voluntary sale." *Helman v. Kentucky Bd. of Tax Appeals*, 554 S.W.2d 889, 891 (Ky. App. 1977).

The law of Kentucky grants the estimated property tax assessment a presumption of validity and places the burden of establishing that the assessment is incorrect on the taxpayer. *Revenue Cabinet, Commonweatlh of Ky. v. Gillig*, 957 S.W.2d 206, 210 (Ky. 1997). To prevail, the taxpayer must "establish that the assessment was wrong, and if there is testimony of competent valuation witness/es in support of the assessment, even though conflicting, a finding adverse to the

taxpayer cannot be set aside as clearly erroneous." *Jefferson County Property Valuation Adm'r v. Ben Schore Co.*, 736 S.W.2d 29, 30 (Ky. App. 1987).

Here, the PVA produced evidence at the hearing that it based its assessment on the recent sale of five comparable properties. It further demonstrated that it took into account some differences between these properties and Hurst's property and made appropriate adjustments. Hurst produced three alternative comparables at the hearing, but it was ultimately the prerogative of the KBTA to weigh the evidence, and we cannot say it clearly erred in rejecting what Hurst presented and accepting the PVA's evidence instead.

Indeed, the thrust of Hurst's argument, as set forth above, does not take issue with the PVA's comparables; it is that he believes the KBTA erred because it was not persuaded by his "evidence of renovations." But, his argument ignores that a tax assessor is not held to the same standard as a private appraiser conducting a fee-type single property appraisal. As explained by the Kentucky Supreme Court,

> The level of accuracy which may be achieved by a private appraiser in a fee-type appraisal or a "single property appraisal" of a parcel of real property simply cannot be attained by the tax assessor nor has it ever been required in the valuation of any property in Kentucky for taxation purposes. Accordingly, for taxation purposes, a tax assessor is allowed to use mass appraisal techniques. Under the mass appraisal approach, while individual characteristics of each property are considered, not all of a particular property's characteristics are considered –

just those factors which allow the assessor to make a logical estimate of the property's value.

For example, in valuing a residential property, if it has been determined that the number of bedrooms, bathrooms, size, and location of the home are factors which provide a logical indication of a property's fair cash value, under a mass appraisal approach, the assessor would obtain information about these characteristics for each property and value similar properties accordingly. On the other hand, in a fee-type appraisal, or a "single property appraisal," the private appraiser would not only consider these characteristics, but would also consider, for example, the condition of the heating and cooling systems, the condition of the interior, any added extras in the home and all other characteristics of the home which would affect its value in any way.

Kentucky courts have recognized in several cases that the level of accuracy achieved by a private fee appraiser in valuing a property cannot practically be achieved by the state tax assessor nor is such accuracy even required by Section 172 of the Kentucky Constitution, which specifically provides that fair cash value will be "estimated." Kentucky courts have previously recognized that some amount of inequality in property taxation is inevitable.

*Gillig*, 957 S.W.2d at 208-09 (citations omitted).

The PVA established that it based its valuation of Hurst's property on similarly situated comparables. Hurst produced no evidence from which the KBTA could have concluded that the PVA's assessment was arbitrary. At most, he introduced evidence relating to factors that our Kentucky Supreme Court has specifically held that the PVA is not required to consider such as the condition of

-24-

the interior of his residence. Hurst's evidence was insufficient to meet his burden

of proof and substantial evidence of record supports the assessment.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the Nelson Circuit

Court.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Adrienne Southworth
Lawrenceburg, Kentucky